[Civ. No. 15192.   Second Dist., Div. Three.   Sept. 18, 1946.]

Adoption of JANICE ADELE MARTIN, a Minor. OTTINA P. SODERMAN et al., Respondents, v. HULDA MARTIN, Appellant.

Marcus, Rabwin & Nash, Eugene H. Marcus and Leo C. Dunnell for Appellant.

Loucks, Phister, Baker & Stephenson for Respondents.

SHINN, J.—This is an appeal by Hulda Martin from an order for the adoption of Janice Adele Martin, now aged five, by her maternal grandparents, John V. and Ottina P. Soderman. Janice is the daughter of Ottina P. Martin, who consents to the adoption, and Clyde Martin, now deceased. Ottina P. Martin, her husband and the child Janice lived in the home of Hulda Martin and her husband, John Martin, and the Martins' young son, then of the age of 16 years, from the time Janice was born until the accidental death of Clyde Martin November 22, 1942. Hulda Martin and her husband are the paternal grandparents of Janice. When Clyde Martin died, Ottina removed from the Martin home to that of her parents, petitioners and respondents herein, but the child has since remained and now is with her paternal grandparents. John V. Soderman was 68 years of age in September, 1945; his wife Ottina was then 62. They are purchasing a home, have $2,500 in bank, $700 worth of bonds, Mr. Soderman carries $3,000 in life insurance, and is steadily employed as foreman of a rigging outfit. In the Soderman home the child would be with her mother. It is claimed that this arrangement, which would ordinarily be a desirable one, would be so seriously detrimental to the welfare of the child as to render the order of adoption an abuse of discretion, this because the mother, since she was about six years of age, has been a chronic sufferer from epilepsy. This unfortunate condition was the principal reason for the residence of the younger Martins in the home of Mr. Martin's parents.

Ottina Martin testified that the condition of her health had improved greatly since she left the home of John and Hulda Martin. Between March, 1943, and March, 1944, she had had 12 to 14 epileptic seizures, but she testified, ''I am so improved that I don't have those hard ones, so many.'' The epileptic attacks would leave her unconscious, sometimes for a minute, usually longer, and upon one occasion she was unconscious for

almost 30 hours. Mrs. Soderman testified that during the past year the seizures had lasted for a half minute to a minute and "would then be all over." Except during these brief intervals she was "perfectly capable and normal in all respects and her health has been improving." At the time of trial Ottina Martin was working as a clerk in a cleaning establishment at San Pedro. She testified that she always had warning of the approach of the attacks and that when the warnings came she would lie down.

There was medical testimony on each side, consisting of opposing opinions as to whether the child would suffer detriment by reason of her observation of her mother's condition or through accidental physical injury that might be occasioned thereby. This testimony will be referred to briefly. The physicians were in substantial agreement that the mother's affliction is a permanent one in the light of present medical knowledge. An osteopathic physician and surgeon, a cousin of the mother who had attended her since 1943, testified that under treatment her seizures had become mild ones, with no convulsions such as she formerly suffered. A psychiatrist who testified on behalf of the petitioners expressed the opinion that the injury to the child's psychic development through observing the mother's condition would be negligible, assuming that the child was not neurotically predisposed. He was further of the opinion that no harm would come from the child's living in the house with her mother, provided she was not under the sole care of her mother. Another psychiatrist testified that he believed there would be a reasonable probability of psychic trauma to the child and that it would not be in the best interests of the child to be transferred from the home of John and Hulda Martin to that of the Sodermans. Another physician who had attended the mother prior to and after the birth of the child testified that there would be danger to the child if the mother happened to be carrying her when she suffered an attack, and still another physician testified that the child living in the home with her mother would not be in the best of surroundings, due to the indelible impressions that might be received from observing the mother's periodic attacks.

While the mother and child were living with the elder Martins, Janice was largely under the care of Hulda Martin, and when Clyde died the elder Martins requested the mother and child to remain with them, but Ottina was not happy

there and went to the home of her own parents, although the child remained with the Martins. Had the mother been content to live with the Martins, she and the child would still be there and living under substantially the same conditions as will prevail in the Soderman home under the order of adoption. The fact that the mother was not happy in the home of her husband's parents reflects no blame upon the latter nor upon the mother. It is only an unfortunate circumstance. The mother is a kindly, gentle, and intelligent person. The Sodermans, needless to say, were before the court and they were found to be qualified in all respects to become the adoptive parents of Janice.

The briefs on appeal contain a thorough discussion of the advantages and disadvantages to the child of living with her mother in the home of respondents. And yet such arguments are only a repetition of those which were made to the trial court and which, we are confident, received the court's most careful consideration. It was the judgment of the court that the advantages which would accrue to the child through being reared in the home of respondents and in the society of her mother would outweigh the disadvantages. And implicit also in the order is a finding that the welfare of the child would be promoted by her removal from the home of the Martins to that of respondents, although this finding is by no means a reflection upon the paternal grandparents. It is not our province to place ourselves in the position of the trial judge and to weigh the evidence under the rules and by the processes which govern in the decision of questions of fact, nor is it our province, if we should chance to disagree with the conclusions of the trial judge, to substitute our discretionary judgment for his own. His decision is final, in the absence of a clear showing that the order of adoption was an abuse of judicial discretion. (*In re Fahlman,* 84 Cal.App. 248 [257 P. 893]; *Guardianship of Peterson,* 64 Cal.App.2d 473 [149 P.2d 65].)

Appellant argues that the maternal grandparents are too old to adopt the child, and their age is, of course, one of the disadvantages to be considered. Another argument is that adoption of the child by respondents is being used as a means by which the mother will be able to have the child with her and that the proceeding therefore has been prosecuted principally for the benefit of the mother. Even if this be true, it would be purely incidental to the controlling fact, as found by the court, that adoption by respondents will best promote the welfare

of the child. The proposed adoption had the approval of the State Department of Social Welfare and the court had the benefit of the report of the investigation made by the department. But the most important feature of the trial was that the parties were before the court, subject to the court's inquiry and observation, which gave the trial judge the benefit of evidence which cannot be reflected in a printed record. The arguments of appellant reduce themselves to the proposition that the young children of a woman who suffers occasional spells of epilepsy should not be permitted to live in the home with her if another entirely suitable home can be provided for them. The trial court's disagreement with that contention was not at all unreasonable. The court undoubtedly believed that it would be of definite advantage to the child to permit the adoption. We appreciate that it was difficult for the court to make an order which deprived the Martins of the custody of their granddaughter, who has lived with them since birth, but this fact would indicate to us that the court was well convinced that the adoption should be permitted. No abuse of discretion has been shown.

The order is affirmed.

Desmond, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 14, 1946.