[Civ. No. 23903.   Second Dist., Div. One.   June 10, 1959.]

TWIN LOCK, INCORPORATED (a Corporation) et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ALBERT AGRON et al., Real Parties in Interest.

Gibson, Dunn & Crutcher, John L. Endicott and W. Claude Fields, Jr., for Petitioners.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, and Edward A. Nugent, Deputy County Counsel for Respondent.

O'Melveny & Myers, Philip F. Westbrook, Jr., Norbert A. Schlei and Maxwell E. Greenberg for Real Parties in Interest.

NOURSE, J. pro tem.*—Petitioners seek a writ of prohibition to enjoin the respondent court from enforcing an order requiring them to produce and permit inspection by the real parties in interest of certain documents or, in the alternative, a writ of mandate to compel the respondent court to vacate that order.

Twin Lock, Incorporated, is the plaintiff and a cross-defendant in the subject action.

The basic issues as formed by the complaint and the cross-complaint and the answers thereto are set forth in the opinion concurrently filed herein in *Twin Lock, Inc.* v. *Superior Court*, Number 23846 †(Cal.App.) [340 P.2d 743]. Such further facts as may be pertinent to the questions here raised will be stated by us in deciding the questions presented.

Pursuant to section 2031 of the Code of Civil Procedure the real parties in interest moved the respondent court for an order requiring the petitioners here to produce and permit inspection and copying of certain documents. They based their motion upon all the papers, files and pleadings in the action and upon the declarations of one of their attorneys and the declaration of the real party in interest, Agron. The respondent court granted the motion as to certain of the documents demanded and denied it as to others. Petitioners attack the order as to certain of the documents demanded on the ground, among others, that good cause was not shown for their production and that, consequently, the order violates their constitutional rights against unreasonable searches and seizures under article I, section 19 of the Constitution of this state.

Although real parties in interest assert that their right to the production of documents is, under section 2031, as broad as their right to examine a party under the provisions of section 2016, we are convinced that this contention cannot be sustained and that the same rules which govern the production of documents under subpoena *duces tecum* and governed their production under section 1000, Code of Civil Procedure, prior to the enactment in 1957 of section 2031, govern the production of documents under that section; this, by reason of the fact that the rules announced by the Supreme Court are based upon a constitutional guaranty against unreasonable searches and seizures and the Legislature could

---

*Assigned by Chairman of Judicial Council.

†A hearing was ordered by the Supreme Court on July 13, 1959. The final opinion of that court is reported in 52 Cal.2d —— [344 P.2d 788].

not, by changing the terms of the statute, in anywise infringe upon those constitutional rights.

The rule as to the right to inspection of papers and documents in the possession of a party to an action is laid down in *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386 [159 P.2d 944]. (See also *Adams* v. *Superior Court,* 49 Cal.2d 427, 433 [317 P.2d 983].)  ▆ The Supreme Court, at page 396 of the McClatchy opinion, stated the rule as follows: "The right to have an inspection of papers and documents in the hands of a party to the action or a third person *is governed by different rules from those applying to depositions. A* party or witness has a constitutional right to be free from unreasonable searches and seizures, and it is therefore incumbent upon the one seeking an inspection to show clearly that he has a right thereto and that the constitutional guaranties will not be infringed. Hence, *the affidavit in support of the demand for inspection must identify the desired books, papers and documents and it must clearly show that they contain competent and admissible evidence which is material to the issues to be tried.* The affiant cannot rely merely upon the legal conclusion, stated in general terms, that the desired documentary evidence is relevant and material." (Italics ours.)

▆ Among the documents which the court ordered petitioner Twin Lock, Incorporated, to produce were certain ledgers and other books of account, invoices, cancelled checks and financial statements.[1] Petitioners do not complain of said order insofar as it applies to the production of the designated records for the period prior to October 1, 1958, but assert that any entries made in any such records as to matters after October 1, 1958, are immaterial. The basis for this contention is that on October 2, 1958, the real parties in interest gave notice of rescission of the basic agreement between the parties under which petitioner Twin Lock, Incorporated, had agreed to purchase and real parties in interest had agreed to sell certain inventions and an application for letters patent upon the

---

[1] "1. . . . (a) General Ledger of Twin Lock, Incorporated from its inception to date; (b) All subsidiary ledgers including specifically cash receipts records, cash disbursements records, check records, voucher and invoice records, sales records, payroll records, and journal entry records, from the inception of Twin Lock, Incorporated to date. (c) All sales invoices, cancelled checks and paid bills from the inception of Twin Lock, Incorporated to date. . . . (f) All financial statements or reports or copies of financial statements or reports prepared for Twin Lock, Incorporated by independent accountants or accounting firms."

grounds that Twin Lock, Incorporated, had defaulted in the payments of the purchase price required to be made by it under the terms of the agreement. They, therefore, claim that any entries in their books of account or any other records pertaining to their profits or losses after the date mentioned could not be relevant. There is no merit in this contention.

The pleadings show that after October 1, 1958, petitioner Twin Lock, Incorporated, has continued to use the invention covered by the contract and to manufacture and sell certain electrical devices. Therefore, if the real parties in interest are, under the cross-complaint, able to establish the rescission they would be entitled to an accounting from the plaintiff in the action on account of any devices manufactured and sold by it after the termination of its right so to do. We may further point out that if at the trial of the action it should be established that the plaintiff was in default the court might, in the exercise of its equitable powers, relieve it therefrom upon condition that within a time stated it should pay to defendants the amount in which it was then in default plus interest and, as certain of the payments which plaintiff was required to make to real parties in interest on account of the purchase price were based upon a percentage of its net profits the books of account and other financial records as to the transactions occurring after October 1st would be relevant and material. (Civ. Code, § 3275.)

■ The court, by its order, further required each of the petitioners to produce their stock record books. The materiality of these records is established by the contract between the parties. By the contract petitioner Twin Lock, Incorporated, agreed to pay the real parties in interest on account of the basic purchase price of $1,250,000, 50 per cent of the net profits received from all sales of capital stock or warrants for the purchase of capital stock of both Twin Lock, Incorporated and Twinlock, Inc., in excess of the sum of $300,000. It is too apparent for argument that the stock record books would show the number of shares sold by each corporation and would be relevant evidence in establishing the amount, if any, which was due to real parties in interest upon the date of their attempted rescission on account of sales of stock which had accrued during the pendency of the litigation.

■ The court further ordered Twin Lock, Incorporated, to produce "All correspondence and letters or memoranda, or copies of letters or memoranda to or from bookkeepers, or accountants or accounting firms, concerning the manner in

which books or accounting records of Twin Lock, Incorporated should be maintained or kept or interpreted, or concerning the preparation by said bookkeepers, accountants or accounting firms or other documents or reports based upon or in any way reflecting the contents of said books or accounting records.''

This was a blanket order which does not identify the particular records to be produced and while there was some showing made to the respondent court that some of the material covered by the order did exist, none of it was identified and there was no showing made that any of the material contained competent and admissible evidence material to any issue to be tried.

The court, by this portion of the order, abused its discretion, acted in excess of its powers and invaded the constitutional rights of petitioner, Twin Lock, Incorporated.

The court further ordered Twin Lock, Incorporated, to produce ''memoranda or correspondence filed with or sent to the Bureau of Internal Revenue or the Internal Revenue Service or any representative thereof, by . . . Twin Lock, Incorporated or any of its officers, agents or employees . . .''

It also required Twin Lock, Incorporated, to produce copies of its federal income tax returns for the fiscal years 1957 and 1958.

Petitioners do not attack the order insofar as it requires the production of the income tax returns and has produced them. The balance of the order it attacks upon grounds hereinbefore stated and its attack must be sustained.

The declarations filed in support of the motion for the order do not contain any evidence that such memoranda or correspondence as plaintiff was required to produce exists, much less any showing that the memoranda or correspondence contain any matter competent or admissible in evidence.

A peremptory writ of prohibition is denied insofar as subparagraphs (a), (b), (c),(d) and (f) of paragraph 1 and paragraph 2 of said order are concerned.

Let a peremptory writ of prohibition issue enjoining respondent court from enforcing its said order of May 13, 1959, insofar as it requires the production by petitioner Twin Lock, Incorporated, of all correspondence and letters or memoranda, or copies of letters or memoranda to or from bookkeepers or accountants or accounting firms, concerning the manner in which books or accounting records of Twin Lock, Incorporated, should be maintained or kept or interpreted, or concerning the

preparation by said bookkeepers, accountants or accounting firms or other documents or reports based upon or in any way reflecting the contents of said books or accounting records;[2] and insofar as it requires the production by petitioner, Twin Lock, Incorporated, of memoranda or correspondence filed with or sent to the Bureau of Internal Revenue or the Internal Revenue Service or any representative thereof by Twin Lock, Incorporated, or any of its officers, agents or employees on its behalf.[3]

White, P. J., and Lillie, J., concurred.

---

[2]Paragraph 1(e) of the order.
[3]As set forth in paragraph 1(g) of the order.