[S. F. No. 20177.   In Bank.   Nov. 17, 1959.]

LAWRENCE BRYANT CASH, Petitioner, v. SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent; THE PEOPLE et al., Real Parties in Interest.

I. B. Padway for Petitioner.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Arlo E. Smith and Preble Stolz, Deputy Attorneys General, Louis P. Bergna, District Attorney (Santa Clara), and William P. Hoffman, Deputy District Attorney, for Respondent and Real Parties in Interest.

GIBSON, C. J.—Petitioner, who is charged by information with attempted burglary and solicitation to commit burglary, seeks a writ of mandate to compel respondent court to issue an order permitting him, prior to trial, to inspect and copy any recordings or transcriptions of conversations between him and Ned Barker, a police officer posing as a prospective accomplice.

At the preliminary hearing Barker testified that other officers told him petitioner had requested a woman named Barbara Hlubek to assist in securing an accomplice to participate in the burglary of a market. On January 7, 1959, Barker went to Mrs. Hlubek's home where he met petitioner, who, in a conversation lasting more than an hour, asked him to take part in the crime and set forth a plan for its commission. Petitioner reviewed the plan at a meeting with Barker at Mrs. Hlubek's home on the evening of January 8. During the conversations petitioner drew diagrams which showed the site of the market, the point at which the building was to be entered, and the location of the safe. These diagrams were taken by Barker. Immediately following the second meeting the two men went to the market, and petitioner was arrested by police officers near the planned point of entry.

After being bound over to the superior court, petitioner moved for an order requiring production of any recordings or transcriptions of his conversations with Barker at Mrs. Hlubek's home.[1] In a supporting affidavit dated February 27, 1959, it was alleged that petitioner did not remember the conversations, that he had reason to believe they were recorded, and that inspection and copies of the recordings are necessary to refresh his memory and to enable him to prepare his defense. The motion was denied without prejudice to its renewal during the trial. The People have taken the position at all times that they neither affirm nor deny the existence of the recordings sought by petitioner.

Several recent decisions have involved production, prior to trial, of written statements or recordings in the possession of the People. *Powell* v. *Superior Court,* 48 Cal.2d 704, 709 [312 P.2d 698], held that the accused had a right to obtain written statements made in the office of the chief of police

---

[1]By a previous motion petitioner sought and obtained a copy of the diagrams assertedly drawn by him at Mrs. Hlubek's home and a copy of a written statement he made to the police after his arrest, which set forth an innocent explanation of his activities with Barker prior to the arrest.

after the commission of the crime. *Vance* v. *Superior Court,* 51 Cal.2d 92, 93 [330 P.2d 773], compelled production of tape recordings of the defendant's statements to the police during interrogation and also of recordings which officers made of their conversation with the alleged victim and played to the defendant while they were questioning him. In *Funk* v. *Superior Court,* 52 Cal.2d 423 [340 P.2d 593], the People were required to produce written statements of prosecution witnesses relating to the matters covered in their testimony at the preliminary hearing.

The basis for requiring pretrial production of material in the hands of the prosecution is the fundamental principle that an accused is entitled to a fair trial. In *Powell* v. *Superior Court,* 48 Cal.2d 704, 706 et seq. [312 P.2d 698], it was noted that an accused was denied production at early common law because he might fabricate evidence to meet the state's case and because the prosecution did not have a reciprocal right in view of the privilege against self-incrimination.

In granting relief, however, this court pointed out that to deny production on the ground that an imbalance would be created between the advantages of prosecution and defense would be to lose sight of the purpose of a trial, which is the ascertainment of the truth; that nondisclosure partakes of the nature of a game; and that the state is so solicitous of according a defendant a fair trial that it will not hinder him in the preparation of his defense by depriving him of competent material and relevant evidence. In other words, although there is a possibility that a defendant may be acting in bad faith and may be seeking merely to acquire advance knowledge of the details of the prosecution's case with a view to shaping his defense accordingly, such a possibility is subordinate in importance to the danger of convicting the innocent and does not warrant denying a request for production where there is a sufficient showing that the request should be granted in the interests of a fair trial. In the present case, as we shall see, there is such a showing.

The recordings sought by petitioner, if they exist, are even more important to the defense than the material obtained by the defendants in the cases cited above. Any such recordings are obviously composed not only of petitioner's own statements but also those of Barker, a prosecution witness who testified at the preliminary hearing with respect to what was said. The conversations occurred in the course of the commission of the alleged crimes, and it is charged that what

petitioner said constitutes solicitation to commit burglary. Any effort to impeach Barker and refute this charge would depend to a great extent on petitioner's precise knowledge as to the contents of the conversations. Moreover, there is a possibility that entrapment will be a defense, and the sequence, as well as the nature, of the remarks made by petitioner and Barker would be extremely significant in this respect. Thus careful study of the details of the conversations, particularly if there were ambiguities, would be necessary for an intelligent preparation of the defense, and the recordings requested, if they exist and are of audible quality, would prove the most reliable source of such details.

The importance to petitioner of knowing the details of the conversations must be considered in connection with his inability to remember what was said. His lack of recollection is alleged by affidavit, as in *Powell* v. *Superior Court*, 48 Cal.2d 704 [312 P.2d 698], and *Vance* v. *Superior Court*, 51 Cal.2d 92 [330 P.2d 773], and this allegation, at least insofar as it relates to the particulars of what was said, is strongly supported by the facts that the first conversation alone lasted more than an hour and that the affidavit was not made until several weeks later. There is nothing to show that petitioner had a greater than average capacity to absorb and retain what was said or that there is any other justification for expecting him to recall the conversations in the detail necessary for the preparation of his defense.

Let a writ of mandate issue directing respondent to set aside its denial of petitioner's motion for production and to issue an order permitting petitioner to inspect and copy any recordings or transcriptions of the conversations in question.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.