[Civ. No. 10159. Third Dist. Feb. 14, 1961.]

RICHARD VETTER, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent.

Robert W. Cole, Public Defender, and Kenneth M. Wells, Assistant Public Defender, for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond Momboisse, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—This is a petition by Richard Vetter for a writ of mandate to compel the respondent superior court to issue its order permitting petitioner to inspect the statements of six witnesses relating to the alleged murder of John Morris who was allegedly slain by petitioner on September 6, 1960, at Folsom Prison.

Vetter was indicted for the crime of murder and for a violation of section 4500 of the Penal Code (assault with a deadly weapon by a convict serving a life term). He was not

arraigned until October 7, 1960, or 31 days after the commission of the offense, at which time the public defender was appointed to represent petitioner. On the same day the public defender wrote a letter to the district attorney requesting the names of the witnesses to the alleged homicide. This letter was delivered on October 10, 1960. On October 20th, or 44 days after the crime, the district attorney furnished the public defender with the names of the witnesses to the alleged murder. On the same day the witnesses were interviewed. Six of the witnesses stated that they had been interviewed by officers of Folsom Prison and by a member of the district attorney's staff on September 6, 1960, the same day of the offense, and that they were unable to state whether they could recall and relate all the details of the events they had witnessed in relation to the time, place and circumstances of the death of Morris which were related to the prison officials and the members of the district attorney's staff. They also stated that they were unable to recall the specific questions asked them. Thereafter, petitioner, through his counsel, made a motion for pretrial inspection, among other things, of the statements of the six witnesses. This motion was supported by affidavits made by the six witnesses in accord with their statements to defense counsel. The motion was denied by the trial court insofar as it related to the statements of the witnesses and this petition followed.

The right of a defendant in a criminal case to pretrial inspection of statements made by such defendant and by other witnesses has been the subject of a number of cases in our reviewing courts, among which may be mentioned *Powell* v. *Superior Court*, 48 Cal.2d 704, 707 [312 P.2d 698] ; *Cash* v. *Superior Court*, 53 Cal.2d 72 [346 P.2d 407] ; *Vance* v. *Superior Court*, 51 Cal.2d 92 [330 P.2d 773] ; *Funk* v. *Superior Court*, 52 Cal.2d 423, 424 [340 P.2d 593] ; *People* v. *Cooper*, 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964] ; *Norton* v. *Superior Court*, 173 Cal.App.2d 133, 136 [343 P.2d 139] ; *Schindler* v. *Superior Court*, 161 Cal.App.2d 513 [327 P.2d 68] ; and *Walker* v. *Superior Court*, 155 Cal.App.2d 134, 139-141 [317 P.2d 130]. It is settled that in any case such pretrial inspection may be granted, and whether it will be granted in any case depends largely upon the facts of such case and generally rests within the sound discretion of the court to which the motion is addressed.

In the recent case of *Cash* v. *Superior Court, supra,* the court said at pages 74-76 :

"Several recent decisions have involved production, **prior**

to trial, of written statements or recordings in the possession of the People. *Powell* v. *Superior Court*, 48 Cal.2d 704, 709 [312 P.2d 698], held that the accused had a right to obtain written statements made in the office of the chief of police after the commission of the crime. *Vance* v. *Superior Court*, 51 Cal.2d 92, 93 [330 P.2d 773], compelled production of tape recordings of the defendant's statements to the police during interrogation and also of recordings which officers made of their conversation with the alleged victim and played to the defendant while they were questioning him. In *Funk* v. *Superior Court*, 52 Cal.2d 423 [340 P.2d 593], the People were required to produce written statements of prosecution witnesses relating to the matters covered in their testimony at the preliminary hearing.

█ "The basis for requiring pretrial production of material in the hands of the prosecution is the fundamental principle that an accused is entitled to a fair trial. In *Powell* v. *Superior Court*, 48 Cal.2d 704, 706 et seq. [312 P.2d 698], it was noted that an accused was denied production at early common law because he might fabricate evidence to meet the state's case and because the prosecution did not have a reciprocal right in view of the privilege against self-incrimination.

█ In granting relief, however, this court pointed out that to deny production on the ground that an imbalance would be created between the advantages of prosecution and defense would be to lose sight of the purpose of a trial, which is the ascertainment of the truth; that nondisclosure partakes of the nature of a game; and that the state is so solicitous of according a defendant a fair trial that it will not hinder him in the preparation of his defense by depriving him of competent material and relevant evidence. █ In other words, although there is a possibility that a defendant may be acting in bad faith and may be seeking merely to acquire advance knowledge of the details of the prosecution's case with a view to shaping his defense accordingly, such a possibility is subordinate in importance to the danger of convicting the innocent and does not warrant denying a request for production where there is a sufficient showing that the request should be granted in the interests of a fair trial. In the present case, as we shall see, there is such a showing. . . .

"The importance to petitioner of knowing the details of the conversations must be considered in connection with his inability to remember what was said. His lack of recollection is alleged by affidavit, as in *Powell* v. *Superior Court*, 48

136

Cal.2d 704 [312 P.2d 698], and *Vance* v. *Superior Court,* 51 Cal.2d 92 [330 P.2d 773], and this allegation, at least insofar as it relates to the particulars of what was said, is strongly supported by the facts that the first conversation alone lasted more than an hour and that the affidavit was not made until several weeks later. There is nothing to show that petitioner had a greater than average capacity to absorb and retain what was said or that there is any other justification for expecting him to recall the conversations in the detail necessary for the preparation of his defense.''

We are convinced that the denial by the court of the right of petitioner to pretrial inspection of the requested statements and documents was an abuse of discretion. It is apparent from the record that immediately following the commission of the alleged crime, and on the same day, six fellow prisoners, who were in the immediate vicinity, were interrogated by the prosecuting attorney and the prison officials and that all six made statements which were either recorded on tape or taken down in shorthand. It is not disputed that these statements are in the possession of the district attorney. As hereinbefore set forth, when these six persons were interviewed by petitioner's counsel some 44 days later they informed counsel that they had made statements but could not recall in detail what questions had been asked them, and that they were unable to state whether they had recalled and related to defense counsel all of the details of the events they had witnessed and which they had related to the prison officials and the prosecuting attorney. Petitioner thereupon made a motion in the trial court for the right of pretrial inspection of the statements of these six prisoners and contends that the denial of his request had denied him due process of law by not giving him a reasonable opportunity to prepare for trial.

Attorneys who are counsel for a defendant charged with the crime of murder have a heavy and serious responsibility. It is their duty to endeavor to ascertain by all proper means any evidence that may aid in a proper defense. When such counsel interview prisoners who are in a position to have observed events surrounding the commission of the offense charged and ascertain from said prisoners that more than six weeks before they had been interrogated by and given statements to the prosecuting attorney, we believe that it was not only the right, but it became the duty, of petitioner's counsel to demand inspection of said statements in order to properly prepare for trial.

Respondent states that petitioner has failed to allege that said prisoners are prospective prosecution witnesses, and the deputy district attorney stated in his affidavit in support of the opposition to the application for the inspection of the statements that said prisoners were not called as witnesses before the grand jury and that at this time it is not the intention to call any of them as witnesses at the trial. But this is no reason for denying the inspection of said statements to petitioner. In order to properly evaluate the statements made to him by these six prisoners, counsel for petitioner was entitled to an inspection of the previous statements made so many days before, when, undoubtedly, the facts and circumstances were fresher in their minds.

Respondent states the petitioner desires to obtain the statements of the six prisoners "so that their testimony can be so drafted as to avoid the embarrassment of conflict between their testimony and their prior statements," and "[t]his will not foster, but rather will frustrate, the discovery of the true facts." Even if respondent's assertion were correct, it would still not be a ground for denying petitioner's right to pretrial inspection, for as stated in *Cash* v. *Superior Court, supra,* at page 75: "[A]lthough there is a possibility that a defendant may be acting in bad faith and may be seeking merely to acquire advance knowledge of the details of the prosecution's case with a view to shaping his defense accordingly, such a possibility is subordinate in importance to the danger of convicting the innocent and does not warrant denying a request for production where there is a sufficient showing that the request should be granted in the interests of a fair trial."

For the reasons hereinbefore stated, and under the authorities hereinbefore cited, we believe that the request for pretrial inspection of the statements in question should have been granted.

Let the writ issue as prayed for.

Peek, J., concurred.

VAN DYKE, P. J.—I dissent.

The judicial discretion vested in the trial court has not been abused. Mandate lies to control judicial discretion only when that discretion has been abused, and, in a legal sense, discretion is abused when, and only when, in the exercise of its discretion, the trial court exceeds the bounds of reason, all the circumstances before it being considered. (*State Farm etc.*

*Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13].) It is not our province to place ourselves in the position of the trial judge and to weigh the evidence in favor of, or against, granting the inspection request. Above all, it is not our province, merely because we chance to disagree with the conclusions of the trial judge, to substitute our discretionary judgment for his own. (*Adoption of Martin,* 76 Cal.App.2d 133, 136 [172 P.2d 552].) I think further that, in granting or refusing to grant motions for pretrial inspection of documents in the hands of the prosecution in a criminal case, or like motions to compel the prosecution to reveal the information it has, or any part thereof especially desired by the defense, fairness to both sides will be best served by leaving the matter in the hands of the trial judge, save only where it is quite clear that abuse of discretion has occurred. Trial judges have definite advantages not possessed by reviewing courts in determining whether or not fairness warrants the disclosure sought.

In this case the motion for inspection is based upon the identical affidavits of six persons who all aver that they were interviewed by prison officials and members of the district attorney's office and that what they said was taken down in the form of tape recordings, stenographic notes, or by other means. These affidavits are significant for what they conceal rather than for what they reveal. The affiants state that they were in the vicinity "of the first tier, screened section, Number One Building at or about 4:30 P.M. on the 6th day of September, 1960." No statement is made that any of them saw or heard anything of importance connected with the killing of Morris. For all that appears they may have told the officials little, if anything, relating thereto. The affidavits do not say the affiants cannot recall in major part whatever it was they may have seen or heard. They go no further than to state that there may be some details which they now may in some measure be unable to recall. They have not seen fit to give the court even a summary of what they saw or heard, or a summary of what they told the officials, and surely in the short time of 44 days they have not forgotten in major part what they saw and heard concerning the dramatic incident of Morris' killing, nor, in major part, what they told the officials. The trial court could surely say that the main picture must still be in their minds in both aspects, and none of them say it isn't; and could reasonably conclude that if there were details that were material they would fall readily into place in the picture and be recalled by anyone who could recall the picture.

The affidavits themselves by the little they state and the lot they omit might well have impressed the trial court as having been carefully tailored; and that court may well have concluded that the ever-present "possibility that a defendant may be acting in bad faith and may be seeking merely to acquire advance knowledge of the details of the prosecution's case with a view to shaping his defense accordingly" (*Cash* v. *Superior Court*, 53 Cal.2d 72, 75 [346 P.2d 407]) had become a strong probability.

There is of course no showing that the officials have in anywise hindered interviewing and reinterviewing each and all of these six people who may have seen or heard something material in respect of the alleged murder; and there can be no doubt that if they saw anything of moment they have been able to recall it in large part, and relate it to defense counsel. Neither is it probable that they cannot now recall, and certainly they do not say they cannot recall, in major part what they told the officials. If they saw and heard things material to prosecution or defense and did not reveal them to the officials but denied their knowledge of them then they are untrustworthy witnesses who ought to be left where their dishonesty placed them. It is no more open to defense than to prosecution to play games.

There is about this entire situation sufficient to justify the trial court in concluding that there is here no more than "a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." (*People* v. *Cooper*, 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964].)

I would deny the writ.

A petition for a rehearing was denied March 10, 1961. Van Dyke, P. J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied April 12, 1961. Schauer, J., was of the opinion that the petition should be granted.