[Civ. No. 48159. Second Dist., Div. Three. July 27, 1976.]

PACIFIC LIGHTING LEASING COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
MARVIN MASON et al., Real Parties in Interest.

## COUNSEL

Patrick G. Bowen, Lawrence H. Eisenberg, Gibson, Dunn & Crutcher, Robert S. Warren and Joseph A. Collins for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Mitchell J. Grossman, Dennis A. Fischer, Deputy Public Defenders, Harold Blaisch and Roger J. Rosen for Real Parties in Interest.

## OPINION

**POTTER, J.**—Petitioner, Pacific Lighting Leasing Company, seeks a writ of mandate requiring respondent Superior Court of the State of California for the County of Los Angeles to vacate its order of March 16, 1976, requiring petitioner to make available for inspection and/or copying on March 22 and March 23, 1976, certain personal property lease files of petitioner, its corporate articles, bylaws and minutes of meetings, all licenses and license applications by petitioner to engage in the business of leasing, and the regularly prepared year-end financial statements of petitioner.[1]

---

[1]The petitioner alleges that such order was made on March 1, 1976. The reporter's transcript of that date indicates that the court announced its decision to require such production of documents by petitioner. However, the court directed the preparation of a formal order. The formal order was signed and filed March 16, 1976. Pursuant to rule 12(a), California Rules of Court, we have caused the entire superior court file to be transmitted to this court and to be made a part of the record of this proceeding.

*Statement of Facts*

Real parties in interest Marvin Mason, Louis Keith Snyder, James D. McCollum, Phillip Wire and Peter J. Buffo are defendants in a criminal prosecution, Los Angeles Superior Court No. A 320778, initiated by a grand jury indictment charging a conspiracy to commit grand theft and 19 counts of grand theft from petitioner. John K. Van de Kamp, District Attorney for the County of Los Angeles, was added as a real party in interest upon application of petitioner.

The indictment arose out of transactions between petitioner and defendants which took the form of personal property leases. The People claim that the defendants defrauded petitioner by the device of having confederates generate fictitious invoices purporting to reflect the delivery to defendants of the personal property which was the subject of the leases, the petitioner's funds advanced in payment of the invoices being shared by the conspirators. Defendants contend, however, that the transactions were understood by all parties to be loans to the purported lessees with no personal property actually involved and that the lease form was imposed by petitioner in order to victimize defendants with exorbitant interest charges and to enable petitioner to make false claims for accelerated depreciation of nonexistent property and thus avoid taxes.

The defendants' efforts to obtain discovery of petitioner's records was initiated by applications for subpoenas duces tecum, each of which was supported by a declaration by the attorney for a defendant. These declarations set forth defendants' contention as to the nature of the transactions, and asserted generally that the items requested would be relevant and necessary to the proper defense of the case by disclosing the existence of other transactions of the same type. Declarants made assertions that they "contemplated" that the records would show petitioner "was the perpetrator of a massive fraud against the federal government, state government and individual citizens of the State of California," and that the defendants were made defendants "only because of a massive cover up of the above mentioned scheme." They further stated general conclusions that the documents requested would show petitioner's "company policy regarding loans made under the guise of leases." In this connection, the declarations specified various ways in which this policy allegedly would be shown. For example, (1) that the lease files "will provide defense counsel with information that these

transactions were loans and not leases, such as financial statements with weighted net worth in realty, bad or marginal credit ratings, poor payment records, statements between lessors and lessees indicating a loan transaction," and (2) "the financial statements of lessees that were rejected . . . will show that the company was relying on ability to repay loans and not to be protected by equipment allegedly leased." No declarant, however, stated on the basis of personal knowledge any specific fact from which it could be inferred that there existed in petitioner's files any such financial statements, and inasmuch as each of them was a defendant's attorney claiming no familiarity with the records of petitioner, it was apparent that these assertions were mere assumptions.

Petitioner made a motion to quash the subpoenas, supported by a declaration of petitioner's attorney. Petitioner attacked the subpoenas upon the grounds (1) that defendants had not complied with the requirements for depositions in criminal cases and that discovery of documents (inspection and copying) is not available "as against private citizens" in criminal proceedings, and (2) that no showing was made justifying the search and seizure of petitioner's records as required by the Fourth Amendment to the United States Constitution and article I, section 13, of the Constitution of the State of California.

At the March 1, 1976, hearing of the motion to quash, the court stated its intent to consider the subpoenas duces tecum "in the nature of requests to produce documents prior to trial," and to order production of the specific categories of documents other than those claimed to be "privileged documents or work product of counsel," denying further discovery to defendants at that time without prejudice to later renewal. The formal order of March 16, 1976, carried out the court's indicated ruling.

The petition to this court was filed March 3, 1976, and on March 10, 1976, we issued a stay of "all further proceedings based on the discovery order made by the Respondent Court on March 1, 1976," insofar as it required petitioner to make available its files and records for examination and duplication by defendants. Thereafter, on April 16, 1976, we issued our alternative writ requiring vacation of the discovery order or that cause be shown in this court why a peremptory writ of mandate should not issue.

The action of this court in granting the temporary stay and the alternative writ of mandate was taken to permit examination of the question whether the order of March 1, 1976, as embodied in the formal order of March 16 (hereinafter referred to as the "March 16 order") was supported by an adequate showing in light of petitioner's assertion of the right to be free from unreasonable searches and seizures.

Thereafter, defendants applied to respondent court for the issuance of subpoenas duces tecum to require the production by petitioner of documents, including most of those which were the subject of the March 16 order, such documents to be produced at the May 10, 1976, trial of the charges against defendants. A hearing was had on said application on May 3, 1976. At the hearing, petitioner contended that further proceedings looking toward discovery of the documents in question was stayed by the order of this court. The trial court, however, construed both the stay and the alternative writ issued by this court as relating to "pretrial discovery," not "matters that would otherwise be produced for trial" which the orders of this court did not stay. In answer to petitioner's reassertion of its right to be free from unreasonable search and seizure, the court stated that it contemplated the production of the documents in court and that "the court would then entertain the Fourth Amendment . . . objection at that time, but they should be addressed specifically to the documents." The formal order, authorizing the issuance of the subpoenas duces tecum sought, was signed and filed May 5, 1976. That order contained the following recitation: "It is noted that the District Court has issued its alternative writ of mandate with respect to the issue of the subpoena duces tecum re pretrial discovery. This court, *the trial court, does not intend to vacate its prior order* and intends, by this order, to allow issuance of a subpoena duces tecum for the production of documents for trial finding that said documents are necessary for the defense." (Italics added.)

Further explanation of the intent of the May 5, 1976, order is found in the transcript of the proceedings on May 10, 1976. At that time, it appeared that the subpoena had not been served upon an appropriate corporate officer. A continuance of the trial was necessitated, and in the course of the discussion the court expanded upon the procedure to be followed in considering petitioner's objections, saying in this respect: "[I] would specifically take each objection as to each document and set a day aside for doing that."

On May 19, 1976, petitioner filed an application for a supplemental stay order and for an order expanding the scope of the alternative writ to include the May 5 order for a subpoena duces tecum re trial. On May 25 this court issued its order denying such application. However, on the basis of the trial court's above quoted statements of intent to give due consideration to petitioner's objections to the production of the documents based upon its rights under the Fourth Amendment and under article I, section 13 of the California Constitution, we stated in our order the following: "We assume the respondent trial court will require an appropriate showing that the subpenaed records are relevant to the defense of the real parties in interest. This may be accomplished by an in camera inspection of the documents in order to determine the existence of good cause justifying the seizure of documents of a nonparty to the litigation. (See U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; *Pitchess* v. *Superior Court,* 11 Cal.3d 531, 535, 538; cf. *Flora Crane Service* v. *Superior Court,* 234 Cal.App.2d 767, 785, 789.) Therefore, the application is denied."

Subsequent to the denial of petitioner's supplemental application, on May 28, 1976, further proceedings resulted in the continuance of the trial date to December 8, 1976, and the setting of proceedings for September 15 and September 22, 1976, relating to the production of petitioner's records. A formal order, effective May 28, 1976, defining the procedure to be followed was filed June 30, 1976. It provided as follows:

"(1) The trial of this matter is continued to December 8, 1976, at 9:00 A.M., in Department 116.

"(2) Defendants, if so advised, shall submit to this court, on or before September 15, 1976, all documentation, including but not limited to declarations and points and authorities, relevant to the issue of good cause and necessity for the production of various records by the witness, Pacific Lighting and Leasing Company. Said documentation shall state in precise factual terms (i) the specific nature of the documentation sought, i.e., description; (ii) its factual relevance to the precise issues and prospective issues of the case and (iii) the necessity for having this witness produce the documentation in the number and amount requested. The documentation, aforesaid, need not be served upon the office of the District Attorney, nor upon counsel for Pacific. All such pleadings shall be kept confidential by the court until further order of court.

"(3) The in camera hearing, for the purpose of inspecting the records sought by defendants, is set for September 22, 1976, at 9:00 A.M., in Department 116. Pacific Lighting and Leasing Company is ordered to produce at said time and place all records and other documentation named on the subpoena duces tecum last issued from this court for trial purposes and shall have present a representative qualified to testify concerning said records.

"Only counsel for Pacific Lighting need be present at the in camera inspection, above."

By order of June 17, 1976, the trial court clarified the effect of the May 28, 1976, order upon the prior orders of March 16, 1976, and May 5, 1976. The order of clarification stated:

"In order that there be no misunderstanding as between all counsel in this matter, the following order of clarification is made this date:

"This Court deems that the prior orders of March 16, 1976, and May 5, 1976, have been and are superseded by this Court's order of May 28, 1976, establishing dates and procedures for the production of documents and their inspection, in camera."

### Discussion

The order of March 16, 1976, has been superseded by the subsequent order of the court of May 28, 1976, which contemplates that before any of petitioner's records are disclosed other than to the court in camera, it must appear to the court that such disclosure does not violate petitioner's rights under the Fourth Amendment of the United States Constitution and article I, section 13 of the California Constitution. The procedure adopted by the trial court is not in excess of its power.

In contrast with the March 16 order, the current order recognizes both the defendants' right of access to information which will assist them in preparing their defense and which is necessary for a fair trial and the petitioner's right to be free from unreasonable search and seizure.

Petitioner's claim that the defendants' right to discovery in a criminal proceeding does not extend to the production of documents by

private party witnesses is not supported by any authorities it cites. *Everett v. Gordon,* 266 Cal.App.2d 667, 671 [72 Cal.Rptr. 379]; *People* v. *Oakley,* 251 Cal.App.2d 520, 524 [59 Cal.Rptr. 478]; ·*Clark* v. *Superior Court,* 190 Cal.App.2d 739, 740 [12 Cal.Rptr. 191]; *People* v. *Mersino,* 237 Cal.App.2d 265, 269 [46 Cal.Rptr. 821]; and *People* v. *Bowen,* 22 Cal.App.3d 267, 278 [99 Cal.Rptr. 498], held only that a criminal defendant has no right to take a deposition other than in compliance with the requirements of Penal Code sections 1335-1337. *Yannacone* v. *Municipal Court,* 222 Cal.App.2d 72 [34 Cal.Rptr. 838], affirmed the dénial of the issuance of a subpoena duces tecum sought by defendant in a manslaughter case to require the Southern Pacific Company to " 'produce their entire investigative file, reports, and statements covering the accident in question.' " (222 Cal.App.2d at p. 74.) The showing made by the defendant, however, did not include "even an averment on information or belief that any file, statement or record in fact exist[ed]." (*Id.*) Moreover, the court specifically stated that its ruling was "without prejudice to defendant's right to the discovery to which he is entitled, upon proper request therefor." (222 Cal.App.2d at p. 75.)

No Penal Code sections define or limit the rights of defendant to discovery by way of subpoena duces tecum or through production and inspection of documents. The only references to either method are (1) the provision of Penal Code section 1327 establishing the form of the subpoena authorized by Penal Code section 1326 which states: "If books, papers, or documents are required, a direction to the following effect must be contained in the subpoena: 'And you are required, also, to bring with you the following' (describing intelligibly the books, papers, or documents required)," and (2) the exemption from the mileage limitations of Penal Code section 1330, "[w]hen a subpoena duces tecum is duly issued . . . ."

*Pitchess* v. *Superior Court,* 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], is direct authority for the power of the court in a criminal proceeding to issue a subpoena duces tecum to require production of documentary evidence in the hands of a nonparty.[2] It upheld the power of the superior court to issue a subpoena duces tecum directing the sheriff to produce records of several investigations conducted by the sheriff's department internal affairs unit inquiring into citizen com-

---

[2]See also *Carlson* v. *Superior Court,* 58 Cal.App.3d 13, 20-21 [129 Cal.Rptr. 650], where the court said: "A subpoena duces tecum, used as provided in the governing statutes, is legal process under which the prosecutor may obtain and use an accused's bank records in criminal proceedings under appropriate circumstances."

plaints of official misconduct by deputy sheriffs whom defendant was accused of battering. The court rejected the sheriff's contention that the affidavits in support of the subpoena were insufficient to show good cause for the production of the records. It said in this respect (11 Cal.3d at pp. 535-537):

"Unlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation. (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176, fn. 12 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) pp. 847-848.) A defendant's motion to discover is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand. (*Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353]; *People* v. *Terry* (1962) 57 Cal.2d 538, 560-561 [21 Cal.Rptr. 185, 370 P.2d 985]; *Powell* v. *Superior Court* (1957) 48 Cal.2d 704, 708 [312 P.2d 698]; *Vetter* v. *Superior Court* (1961) 189 Cal.App.2d 132, 134 [10 Cal.Rptr. 890].) Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. (*Hill* v. *Superior Court* (1974) *supra,* 10 Cal.3d at p. 816; *Cash* v. *Superior Court* (1959) 53 Cal.2d 72, 75 [346 P.2d 407]; *Powell* v. *Superior Court* (1957) *supra,* 48 Cal.2d at pp. 707, 709; *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) *supra,* pp. 881-882.)

"In accordance with these principles, it has long been held that civil discovery procedure has no relevance to criminal prosecutions. (*Powell* v. *Superior Court* (1957) *supra,* 48 Cal.2d 704, 707-708; *Yannacone* v. *Municipal Court* (1963) 222 Cal.App.2d 72, 74-75 [34 Cal.Rptr. 838]; *Clark* v. *Superior Court* (1961) 190 Cal.App.2d 739, 742-743 [12 Cal.Rptr. 191]; *People* v. *Wilkins* (1955) 135 Cal.App.2d 371, 377-378 [287 P.2d 555]; *People* v. *Ratten* (1940) 39 Cal.App.2d 267, 271 [102 P.2d 1097]; *Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260, 263 [44 P.2d 320].) Chief Justice Traynor reaffirmed this dichotomy in *Shively* v. *Stewart* (1966) 65 Cal.2d 475, 479 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431], when he wrote: 'We are committed to the wisdom of discovery, by statute in civil cases (Code Civ. Proc., §§ 2016-2036), and by common law in criminal cases.' Legislative silence on criminal discovery, he noted, means that it has left to the courts the adaptation of common law

concepts. More recently this court in *Hill* unequivocally declared that criminal discovery is an inherent power of the court 'in the absence of legislation' (10 Cal.3d at p. 816). While civil discovery in general is as old as our Code of Civil Procedure, Witkin observes that the 'California law of discovery in criminal cases is a creation of the courts dating back only a few years.' (Witkin, Cal. Criminal Procedure (1963) p. 265.)

"Nothing in the legislative history of the current version of the civil discovery act (Code Civ. Proc., § 2016 et seq.) discloses an intention to expand its province to incorporate criminal matters. (See Committee on Administration of Justice, *Report on Discovery* (1956) 31 State Bar J. 204-209, 227; Comment, *Depositions, Proceedings to Perpetuate Testimony, Interrogatories to Parties: The Federal Rules and the California Law* (1956) 44 Cal.L.Rev. 909.) Indeed, civil discovery in California is now virtually co-extensive with the federal practice, which clearly does not embrace criminal proceedings. (See Fed. Rules Crim. Proc.)

"Were a court to require strict adherence to the provisions of Code of Civil Procedure sections 1985 and 2036, subdivision (a), it is likely that Fifth Amendment problems would develop in many instances. Therefore, in contrast to the formal requirements for civil discovery, an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. (*Cash* v. *Superior Court* (1959) *supra,* 53 Cal.2d 72, 75; *Powell* v. *Superior Court* (1957) *supra,* 48 Cal.2d 704, 707.) The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' (*People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964]; see also *Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 804 [91 Cal.Rptr. 594, 478 P.2d 26]; *Ballard* v. *Superior Court* (1966) *supra,* 64 Cal.2d 159, 167; *People* v. *Terry* (1962) 57 Cal.2d 538, 561 [21 Cal.Rptr. 185, 370 P.2d 985]; *People* v. *Lane* (1961) 56 Cal.2d 773, 785-786 [16 Cal.Rptr. 801, 366 P.2d 57]; *People* v. *Valdez* (1962) 203 Cal.App.2d 559, 565 [21 Cal.Rptr. 764]; Louisell & Wally, Modern Cal. Discovery (2d ed. 1972) *supra,* pp. 883-886.) [Fn. omitted.]"

Both *Yannacone* and *Carlson* recognize the availability of the subpoena duces tecum to compel production of documents by private party witnesses; the Penal Code provisions contain no limitations confining such process to the prosecutor or law enforcement agencies; and "the

fundamental proposition" (that the accused "is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information") upon which *Pitchess* based the defendant's right to production of documents from the sheriff is no less applicable where the relevant information is in the hands of a private party witness. We conclude that a private nonparty witness is subject to a subpoena duces tecum in a criminal case.

This, however, does not necessarily mean that a different showing may not be required to justify production of documents by a private nonparty witness over his constitutional objection than that which is required where the discovery is sought from the prosecutor or from a law enforcement agency.

The liberal standard stated in *Pitchess* entitling a defendant in a criminal case to discovery on the basis of "general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime' " (11 Cal.3d at p. 537) poses no problem in a case such as *Pitchess* and the cases cited therein. In each of these cases the party from whom the records were sought had no standing to assert rights against unreasonable search and seizure with respect to such records. Sheriff Pitchess as custodian of the public records certainly had no such rights and none were asserted by him. He relied, instead, upon "[t]he privilege attaching to official information . . . ." (11 Cal.3d at p. 539.) In all the other cited cases, the records were sought from the prosecution. The statement in *Pitchess,* therefore, that the requirements for a showing of good cause imposed by Code of Civil Procedure sections 1985 and 2036 did not apply cannot be construed as a holding that a witness, such as petitioner, who does have the right to be free from unreasonable search and seizure, can be deprived of such rights by a defendant's "general allegations" of his need to ascertain facts which will assist him in preparing his defense.

A similar statement in *McCartney* v. *Commission on Judicial Qualifications,* 12 Cal.3d 512, 520 [116 Cal.Rptr. 260, 526 P.2d 268], is made in the same context. Referring to *Pitchess,* the court said: "Without deciding which discovery standard—the civil practice rule requiring a showing of relevance and materiality (Code Civ. Proc., § 2036) or the slightly more liberal criminal law requirement that the information sought be demonstrated necessary for a fair trial (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536 [113 Cal.Rptr. 897, 522 P.2d 305])—should apply to the

Commission's proceedings, we believe that it was incumbent upon petitioner to make some minimal showing of good cause for the depositions." Again, however, there was no witness whose right to be secure from unreasonable search and seizure was affected by the discovery sought. The inapplicability of the civil discovery provisions thus eliminated any necessity for a constitutional showing of good cause.

The civil discovery provisions requiring a showing of good cause are, moreover, merely an attempt by the Legislature to insure adequate protection against unreasonable search or seizure. This is made clear by the decision of our Supreme Court in *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 393-395 [15 Cal.Rptr. 90, 364 P.2d 266]. There the court said: "Petitioner next argues that the Legislature was without constitutional power to enact a statute which provides that a party or witness must disclose material without reference to its admissibility. The argument is based upon the rule announced in *Twin Lock, Inc.* v. *Superior Court, supra,* 171 Cal.App.2d 236 [340 P.2d 748]. There the court reasoned that in spite of the express provision of section 2031, the right to the production and inspection of documents is not as broad as the right to examine a party under the provisions of section 2016. It based this conclusion upon a review of several Supreme Court cases (particularly *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386 [159 P.2d 944]) which had interpreted the right to inspect documents as such right existed under section 1000 of the Code of Civil Procedure (since repealed by the discovery act). The *Twin Lock* case relied upon and quoted the following language used in *McClatchy* (26 Cal.2d 386, at p. 396): 'The right to have an inspection of papers and documents in the hands of a party to the action or a third person is governed by different rules from those applying to depositions. A party or witness has a constitutional right to be free from unreasonable searches and seizures, and it is therefore incumbent upon the one seeking an inspection to show clearly that he has a right thereto and that the constitutional guaranties will not be infringed.' Based upon that quotation, the court in *Twin Lock* concluded that any deviation from the rules previously announced for the protection of parties under the old section 1000 constituted an unreasonable search, and that the Legislature was powerless to provide any method not consistent with those rules. Such reasoning is unsound. At the time of *McClatchy,* inspection was governed by the provisions of section 1000, and depositions by the provisions of sections 2020 et seq., all since repealed. Those sections did not spell out, as does the present discovery act, the various procedures which protect the parties from the

unfairness of an unreasonable inspection. It was therefore necessary for the courts to apply rules which would guarantee such constitutional protection. The present statutes, however, provide that an order requiring a party to submit to inspection of material in his possession or control may only be made for good cause, shown on motion heard after notice to such party. It is further provided that in making such order the court shall exercise a wide discretion in the application of any number of procedures intended to protect the parties against abuse, oppression or any other alleged injustice. *Thus, the statute has adequately provided for protection against the unreasonableness of the search or seizure.* The California Constitution only prohibits 'unreasonable' seizures. Reasonable searches are permitted. One such 'reasonable' search is by means of a search warrant. But just as search warrants are justifiable on the showing of good cause (and the provision of other protective procedures), so an order for the inspection of material in a civil case is reasonable when similar provision is made. The *Twin Lock* decision is in conflict with the specific legislative enactment, is wrong, and is for those reasons, overruled. [Fns. omitted.]" (Italics added.)

The expansion of criminal discovery to include the production of documents by witnesses who are protected against unreasonable search or seizure thus requires adequate provision for protection of those rights. The standard set forth in *Pitchess*—"general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime'" (11 Cal.3d at p. 537), suffices to entitle a criminal defendant to discovery and the production of documents from persons having no constitutional rights to protect; but it does not appear to be an adequate substitute for a showing of good cause when such constitutional rights are asserted. Some showing that the search of petitioner's records is not an unreasonable seizure is required.

No Supreme Court decision has dealt expressly with the showing required by a defendant in a criminal case when discovery is sought from a witness who is objecting upon the ground of unreasonable search and seizure. General principles which appear applicable are stated in *Hill* v. *Superior Court,* 10 Cal.3d 812, 816-817 [112 Cal.Rptr. 257, 518 P.2d 1353], where our Supreme Court said:

"A motion for discovery by an accused is addressed to the sound discretion of the trial court, which has inherent power to order discovery in the interests of justice. (See *People* v. *Terry,* 57 Cal.2d 538, 560-561 [21

Cal.Rptr. 185, 370 P.2d 985]; *Powell* v. *Superior Court,* 48 Cal.2d 704, 708 [312 P.2d 698]; *Vetter* v. *Superior Court,* 189 Cal.App.2d 132, 134 [10 Cal.Rptr. 890].)

"It, has been stated that the basis for granting pretrial discovery to a defendant is the fundamental principle that an accused is entitled to a fair trial (see *Cash* v. *Superior Court,* 53 Cal.2d 72, 75 [346 P.2d 407]; *Powell* v. *Superior Court, supra,* 48 Cal.2d 704, 707, 709; Louisell/Wally, Modern Cal. Discovery, *supra,* pp. 881-882), and 'Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on the issues in the case, and *in particular it has no interest in convicting on the testimony of witnesses who have not been* as rigorously cross-examined and *as thoroughly impeached as the evidence permits.'* (Italics added; *People* v. *Riser,* 47 Cal.2d 566, 586 [305 P.2d 1]; in accord, *Jones* v. *Superior Court,* 58 Cal.2d 56, 59 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213]; *Powell* v. *Superior Court, supra.*)

"An accused, however, is not entitled to inspect material as a matter of right without regard to the adverse effects of disclosure and without a prior showing of good cause. '*In criminal cases, the trial court retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest.* (See *People* v. *Lopez,* 60 Cal.2d 223, 246-247 . . . ; *Powell* v. *Superior Court, supra,* 48 Cal.2d 704, 707-708.) Additionally, the court has discretion to deny discovery in the absence of a showing which specifies the material sought and furnishes a *"plausible justification"* for inspection. (See *Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 167; cf. Kaufman, *Criminal Discovery and Inspection of Defendant's Own Statements in the Federal Courts,* 57 Colum.L.Rev. 1113, 1118.)' (See *Joe Z.* v. *Superior Court, supra,* 3 Cal.3d 797, 804.) ' "A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense* . . . ." (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U.L.Rev. 228, 244; italics added.)' (*Ballard* v. *Superior Court, supra,* at p. 167.) [Fn. omitted.]" (Italics added.)

The protection of petitioner's right to be free from unreasonable search and seizure constitutes a "legitimate governmental interest."

Thus, though "ordinarily" a criminal defendant may be entitled to pretrial knowledge where "it appears reasonable that such knowledge will assist him in preparing his defense" (*id.*), the protection of the witness's constitutional rights requires that the " 'plausible justification' for inspection" (*id.*) be so substantiated as to make the seizure constitutionally reasonable.

Where no Fifth Amendment problems are thereby posed,[3] there is little reason to excuse the accused from compliance with the normal requirement that the party seeking discovery of documents furnish "factual data by the required affidavit" justifying disclosure. (*Johnson* v. *Superior Court,* 258 Cal.App.2d 829, 837 [66 Cal.Rptr. 134].) In *Johnson,* the court stated: "The requirement of ... good cause ... is not met by an affidavit which is totally devoid of any statement of facts." (258 Cal.App.2d at p. 835.) To like effect, see *People* v. *West Coast Shows, Inc.,* 10 Cal.App.3d 462, 469 [89 Cal.Rptr. 290], where the court said: "The showing must be of specific facts justifying discovery . . . ." In the case at bench, defendants do not appear to be denying their receipt of funds from petitioner; by asserting that the transactions were loans, they are admitting such receipt but denying any fraudulent intent. There is, therefore, no apparent reason that if such is the fact defendants cannot support their discovery demands with declarations stating specific facts of which they have personal knowledge. For example, if they were told by petitioner that the transactions constituted loans and were obliged to furnish financial statements or "loan applications," they can so state under oath, thereby giving rise to a reasonable inference that like events occurred with respect to other lessees of petitioner. On that basis, the court's in-camera examination of petitioner's files and the disclosure of any such matter contained therein would certainly be reasonable. Likewise, furnishing defendants with the names and addresses of all of petitioner's other lessees as potential defense witnesses would be justified. Such disclosure would, however, not necessarily entail inspection or copying of the entire content of petitioner's files.

If Fifth Amendment problems do exist which preclude defendants from showing specific facts justifying seizure of petitioner's records, defendants should demonstrate this and make the best showing consistent with their privilege against self-incrimination.

---

[3] In *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 536, the court states: "Were a court to require strict adherence to the provisions of Code of Civil Procedure sections 1985 and 2036, subdivision (a), it is likely that Fifth Amendment problems would develop in many instances."

The procedure adopted by the trial court appears well-suited to procuring the information necessary to make an informed ruling.[4] The defendants have been afforded the opportunity to furnish further documentation supporting the reasonableness of production of petitioner's records. When provided with such specific information, the court will be in a position, upon examining petitioner's files in camera, to render an informed decision as to the reasonableness of permitting the search or seizure of petitioner's records.

It is not appropriate for this court to direct the trial court as to the manner in which it shall exercise its discretion. As our Supreme Court said in *Shepherd* v. *Superior Court (Jensen)*, 17 Cal.3d 107, 120 [130 Cal.Rptr. 157, 550 P.2d 161]: "Issues of this nature, whose determination lies within the sound discretion of the trial court, should normally be addressed by it in the first instance . . . ." See also *McCartney* v. *Commission on Judicial Qualifications, supra*, 12 Cal.3d at page 520, wherein the court stated: "[M]atters of discovery are generally within the sound discretion of the initial trier of fact . . . ."

It appears, therefore, that the trial court's order of May 28, 1976, which supersedes all prior orders, makes suitable provision for protecting petitioner against unreasonable search or seizure, and that the trial court contemplates exercising its discretion only after a full examination of all the facts bearing upon the reasonableness of requiring petitioner to disclose its business records to defendants.

The peremptory writ is denied and the alternative writ is hereby discharged.

Ford, P. J., and Allport, J., concurred.

Petitions for a rehearing were denied August 19 and 25, 1976, and petitioner's application and the petitions of real parties in interest McCollum and Snyder for a hearing by the Supreme Court were denied October 28, 1976.

---

[4]It is assumed that the provision of the May 28, 1976, order that defendants' documentation be kept "confidential by the court until further order of the court" will not be so employed as to deny petitioner an opportunity to respond to any of such documentation which is a basis for a discovery order. Due process clearly requires such an opportunity.