[No. B031755. Second Dist., Div. Three. Nov. 10, 1988.]

CITY OF ALHAMBRA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROBERT LEE RODRIGUEZ, Real Party in Interest.

[No. B032779. Second Dist., Div. Three. Nov. 10, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROBERT LEE RODRIGUEZ, Real Party in Interest.

**COUNSEL**

Leland C. Dolley, City Attorney, Burke, Williams & Sorensen, Slade J. Neighbors, Ira Reiner, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Robert W. Carney, Deputy District Attorneys, for Petitioners.

No appearance for Respondent.

Jeffrey Brodey, Brodey & Price, Paul L. Gabbert and Jill Jakes for Real Party in Interest.

**OPINION**

**CROSKEY, J.—**

## INTRODUCTION

In these proceedings[1] the City of Alhambra (City), as an interested third party, and the People, appearing through the district attorney's office, seek writ relief from certain pretrial discovery orders issued at the request of the real party in interest, Robert Lee Rodriguez (hereinafter defendant) who is a defendant in a multiple-murder case.[2] The City's petition (case No. B031755) argues that the orders were improper because (1) they were issued by a judge who was assigned simply to hear applications under Penal Code section 987.9 for defense investigation funds, (2) compliance with the orders would violate protected governmental interests and (3) there was not a sufficient showing of plausible justification.

The People's petition (case No. B032779) contends that the order requiring disclosure of records by the district attorney should be vacated because (1) the in camera procedures utilized by the trial court deprived the People of a fair hearing, (2) there was a lack of specificity and timeliness in the defendant's requests and (3) the order imposed an unreasonable burden on law enforcement.

As we conclude that it is improper for a Penal Code section 987.9 judge, in the absence of an express delegation by the trial judge, to issue pretrial discovery orders, we grant the relief requested by the City. With respect to the People's petition, we conclude that the defendant has made a sufficient showing of plausible justification to receive the requested records which were adequately described and which can be produced without imposing an unreasonable burden on any governmental entity or violating any protected governmental interest. We therefore deny the People's petition.[3]

---

[1] As these two petitions (case Nos. B031755 and B032779) arise from the same murder case and present similar issues, we have determined to consolidate them for resolution.

[2] Defendant was charged with two counts of murder under special circumstances and one count of attempted murder. It was alleged that on January 18, 1984, defendant murdered Mai-Dao Dang Nguyen; on August 18, 1984, he murdered Rosemary Hernandez and on February 1, 1985, he attempted to murder Shirley Lu. During the time period of the alleged crimes, defendant was employed as a delivery person for the Los Angeles Times, and the crimes all occurred in or about the geographical area of defendant's paper route during the early morning hours. Lu, who was attacked in the driveway adjacent to her home, has identified defendant as her attacker and newspaper delivery person. According to defendant's attorney's declaration, the People contend that defendant sexually assaulted and murdered Hernandez, then loaded her personal property into her Volkswagen van, drove the van away from her house and returned to the house and set it on fire.

[3] The record reflects that the issues raised by these consolidated petitions are now moot in that the trial of the defendant has been completed and, on September 1, 1988, he was sen-

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *City of Alhambra's Reports*

On December 1, 1987, the defendant applied for a confidential ex parte order before Judge Gilbert C. Alston, who had previously been assigned by the trial judge (Judge Jack B. Tso), to hear applications for funds under Penal Code section 987.9. Defendant's attorney submitted to the court a separate declaration under seal in order to preserve the confidentiality of the defense strategy. Judge Alston granted this ex parte application and issued an order authorizing the issuance of a judicial subpoena duces tecum requiring the production of copies of all reports in the possession of the Alhambra Police Department[4] of all homicide investigations (1) involving female victims, (2) during the time period July 1, 1983, to July 31, 1985, (3) where death was caused by other than a firearm or automobile and (4) where the suspects, if any, are adult males. The subpoena duces tecum was returnable for an in camera examination and review by the court before being released to defense counsel.[5]

Thereafter the following events occurred: (1) On December 2, 1987, the City was served with the subpoena compelling it to produce the above-mentioned homicide reports for in camera inspection by the court on December 10, 1987;

(2) On December 10, 1987, the City filed an ex parte motion to quash the subpoena along with an ex parte petition to reconsider and vacate the

---

tenced to a life term without possibility of parole. We originally considered the trial court's discovery orders in an opinion filed herein on April 28, 1988, at which time we issued the same orders which are set forth at the conclusion of this opinion. At the request of the People we granted a rehearing on May 26, 1988. Prior to that date, however, the People had complied with the trial court's discovery order which our earlier decision had enforced. While this raises the question of mootness, we believe that important issues of substantial and continuing public interest are presented by this case and are likely to recur. We have therefore determined to issue this opinion in order to provide some guidance to trial courts. (*Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 868, fn. 8 [239 Cal.Rptr. 626, 741 P.2d 124]; *United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 906 [122 Cal.Rptr. 877, 537 P.2d 1237].)

[4] Application was also made for reports involving similar homicide investigations made by the Los Angeles County Sheriff's Department; El Monte Police Department; Montebello Police Department; Monterey Park Police Department; South Pasadena Police Department; Pasadena Police Department and the San Gabriel Police Department. These were given to the court and, after in camera inspection, two of the reports were given to defendant.

[5] From the record it appears that the Los Angeles sheriff's office is called to investigate all homicides in the City of Alhambra if the investigation is likely to last more than two or three days. According to Alhambra police testimony, one such investigation report existed. Apparently, this was turned over to Judge Alston by the sheriff's department in response to the subpoena duces tecum originally issued. Thus, only those homicide reports that the City itself investigated have not been turned over to Judge Alston as per the subpoena duces tecum, *if any such reports do in fact exist.*

original order of December 1, 1987. These matters were heard by Judge Alston and denied, the court ordering production of the reports for in camera inspection by December 23, 1987;

(3) On December 22, 1987, the City filed a request for stay and a petition for writ of mandate with this court to relieve it from the obligation of producing the homicide reports and records requested. That same day, this court issued a temporary stay order and alternative writ of mandate;

(4) On January 5, 1988, the Alhambra Police Department was served with a subpoena issued by the district attorney's office compelling Alhambra Police Officer Jim Varga to appear in superior court to testify regarding various homicide records and reports of the City;

(5) On January 6, 1988, the City's motion to quash the subpoena heard by Judge Alston was summarily denied and Officer Varga ordered to appear on January 6, 1988, for pretrial testimony in regard to various reports and records. Judge Alston additionally determined that the aforesaid temporary stay order and alternative writ issued by this court on December 22, 1987, did not apply to testimony by Officer Varga;

(6) On January 6, 1988, the City requested from this court a stay order extending the dates for the appearance of Officer Varga to a date 15 days after issuance of a final ruling on its petition for writ of mandate; and

(7) On January 8, 1988, this court ordered the requested temporary stay and issued a second alternative writ of mandate.

2. *District Attorney's Reports*

On February 6, 1988, defendant filed a motion with the trial court for discovery requesting 12 specific homicide investigation/police reports[6] from

---

[6] 1. Burbank Police Dept. DR #85-150-5263; victim - Carol Kyle, sexually attacked on May 30, 1985;

2. Los Angeles (L.A.) Police Dept. DR #84-11-14680; victim - Jennie Vincow, murdered between June 27-28, 1984;

3. Monterey Park Police Dept. DR #85-2050; victim - Lian Yu, died March 17, 1985;

4. Monterey Park Police Dept. DR #85-4956; victim - Joyce Lucille Nelson, died July 7, 1985;

5. L.A. County Sheriff's Office case # 085-04423-0533-011; victim - Maria Hernandez, attempted murder on March 17, 1985;

6. L.A. County Sheriff's Office case # 085-044232-0533-011; victim - Dale Okazaki, killed March 17, 1985;

7. L.A. County Sheriff's Office case # 085-02145-1570-011; victim - Maxine Zazzara, killed March 28, 1985;

the district attorney's office. To preserve the confidentiality of the defense, defendant's attorney submitted a separate declaration under seal for in camera inspection and review. On February 11, 1988, the trial judge granted defendant's discovery motion and ordered that "the summary of the investigator" of the 12 crimes be made available to defendant on February 18, 1988.

On that date, the district attorney, on behalf of the People, filed a petition for a writ of mandate annulling and vacating the superior court's order of February 11, 1988, and requesting a new order denying the February 6, 1988, motion for discovery in its entirety. A stay of the discovery order was also requested. This court issued an alternative writ of mandate and granted a temporary stay pending a determination on the merits of the petition.

### DISCUSSION

1. *City of Alhambra Petition*

 a. *Subpoenaed Police Reports*

In its petition, the City of Alhambra asserts a number of arguments which, reduced to their essence, may be summarized as follows: (1) the discovery orders were improperly issued by a judge assigned by the trial judge to hear applications for investigative funds under Penal Code section 987.9,[7] (2) the defendant's discovery motion should have been denied on the

---

8. L.A. County Sheriff's Office case # 485-00061-2699-055, Monrovia Police Dept. case # 85-9227; victim - Mabel Bell, severely beaten between May 29 - June 1, 1985 and subsequently died.

9. L.A. County Sheriff's Office case # 485-00061-2699-055, Monrovia Police Dept. case # 85-0227; victim - Florence Lang, attempted murder, attacked between May 29 and June 1, 1985;

10. L.A. County Sheriff's Office case # 084-00072-2699-011, Arcadia Police Dept. # 85-4669; victim - Patti Higgins, murdered June 28, 1985;

11. L.A. County Sheriff's Office case # 085-00075-2699-011; Arcadia Police Dept. # 85-4762; victim - Mary Louise Cannon, murdered June 2, 1985;

12. L.A. County Sheriff's Office case # 085-00076-2699-011, Sierra Madre Police Dept. case # 85-0808, victim - Whitney Bennett, attempted murder July 5, 1985.

[7] Penal Code section 987.9 states, in pertinent part: "In the trial of a capital case . . . the indigent defendant, through the defendant's counsel, may request the court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense. The application for funds shall be by affidavit and shall specify that the funds are reasonably necessary for the preparation or presentation of the defense. The fact that an application has been made shall be confidential and the contents of the application shall be confidential. Upon receipt of an application, a judge of the court, other than the trial judge presiding over the case in question, shall rule on the reasonableness of the request and shall disburse an appropriate amount of money to defendant's attorney. The ruling on the reasonableness of the request shall be made at an in camera hearing. In making the ruling,

grounds that it violated a legitimate governmental interest under Government Code section 6255[8] and Evidence Code section 1040[9] and (3) the defendant failed to provide an adequate showing of plausible justification for the material requested.

■ With respect to the City's first objection, the defendant argues that because of "Judge Alston's familiarity" with the defense and Penal Code section 987.9's "umbrella confidentiality" his ex parte application to Judge Alston for the issuance of an order authorizing a subpoena duces tecum was proper.[10]

However, since the purpose of Penal Code section 987.9 is only to provide for payment and funding of investigations, experts, and other pretrial preparation for the presentation of a defense (see *Keenan* v. *Superior Court* (1982) 31 Cal.3d 424, 430 [180 Cal.Rptr. 489, 640 P.2d 108]), defendant's application should not have been considered by the section 987.9 judge. Contrary to defendant's argument, it does not necessarily follow that the code section allows a section 987.9 judge to hear all ex parte motions (or applications) a defendant may have in order to preserve confidentiality. The *trial judge* supervises and handles the substantive case and, without his express delegation, another judge should not hear and decide pretrial discovery motions. Therefore, Judge Alston should have neither heard nor decided defendant's confidential ex parte application. The City's motion to quash should have been granted.[11] To hold otherwise would undermine the

---

the court shall be guided by the need to provide a complete and full defense for the defendant. . . ."

[8] Government Code section 6255 states: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

[9] Evidence Code section 1040 states in pertinent part: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] (1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered. . . ."

[10] Defendant's counsel, however, candidly conceded at oral argument that such use of the section 987.9 judge was "creative" and without statutory or judicial authority.

[11] In view of our agreement with the City's first argument we do not reach its other objections, but do consider the issues raised by such objections in connection with our disposition of the People's petition.

trial judge's control over the case and would encourage the unacceptable practice of "judge shopping."

b. *Officer Varga's Subpoena*

After this court issued a temporary stay order and alternative writ of mandate with respect to the subpoenaed police reports, Judge Alston denied the City's motion to quash a subpoena compelling Officer Varga to appear in his court.[12] The City argues that its motion to quash should have been granted.

During a hearing before Judge Alston, Officer Varga was identified as the City's "lead detective insofar as homicide investigations go." In an attempt to determine if any other homicide investigation reports existed besides the one turned over to the court by the sheriff's department, the district attorney subpoenaed Officer Varga. A temporary stay order and alternative writ of mandate was then issued by this court to stay the order requiring his appearance.

As noted, *ante,* in the absence of a specific delegation by the trial judge, the Penal Code section 987.9 judge's court was not the proper forum for *any* discovery motion. These motions should have been addressed solely to the sound discretion of the trial judge, who has inherent power to order discovery when the interests of justice so demand. The propriety and necessity of Officer Varga's subpoena must be decided by the trial judge or any judge to whom the task is expressly delegated by him. Consequently, the City's motion to quash should have been granted.

2. *The People's Petition*

The People argue that (1) since the defendant's ex parte discovery motion (which *was* properly directed to the trial judge) was in a declaration that was sealed, the prosecutor was forced to speculate that it pertained to modus operandi evidence and, as a result, the People were denied a fair hearing, (2) the requested discovery was too broad and lacked the specificity necessary to support the order made by the trial court, (3) the motion was made in a dilatory manner and was untimely, and (4) motions similar to defendant's are beginning to be made in a number of trial courts posing a serious problem, burdening law enforcement efforts and resources, thus creating a problem which must be dealt with by adequate limiting rules

---

[12] In denying the motion, the court stated: ". . . let me advise you at this time that this court will make a determination as to whether this witness or any other witness is relevant to the case, or has information which will assist either the court or the prosecution or the defense in the conclusion of this case. . . ."

promulgated by the appellate courts. These objections raise a number of issues relating to a criminal defendant's right to pretrial discovery.

 To preserve a defendant's claim of confidentiality at the time of any discovery motion, declarations and other supporting evidence may be submitted to the trial court for in camera examination so that the court may decide if the claim of confidentiality is justified and, if so, to what extent. The trial court should not be bound by defendant's naked claim of confidentiality but should, in light of all of the facts and circumstances, make such orders as are appropriate to ensure that the maximum amount of information, consistent with protection of the defendant's constitutional rights,[13] is made available to the party opposing the motion for discovery.

In making this determination the trial court must recognize that while ex parte hearings may be necessary to protect a defendant's rights (see, e.g., *Keenan* v. *Superior Court, supra,* 31 Cal.3d 424, 430 [where the court sanctioned a defendant's confidential in camera showing, to avoid undue disclosure of defense strategy, in support of an application for the appointment of a second attorney]),[14] it does not follow that the prosecutor (or interested third parties), must be precluded from effective participation in an important pretrial matter merely because the defendant asserts that the factual or legal showing made in support of a particular motion should remain confidential. If that were the rule, all defense discovery motions would soon be made and conducted in camera, to the detriment of our system of criminal justice in that those proceedings would not then be tested by the stringent and wholesome requirements of adversary litigation.

[13]Those constitutional rights have been characterized in *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 325-326 [85 Cal.Rptr. 129, 466 P.2d 673], as prohibiting the compelled discovery of any defense information that *conceivably* might lighten the load the People must shoulder in proving their case-in-chief. This is based upon the defendant's right against self-incrimination which "forbids compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense. . . ." (*Id.,* at p. 326.) See also, *In re Misener* (1985) 38 Cal.3d 543, 546-551 [213 Cal.Rptr. 569, 698 P.2d 637]. We recognize that both *Prudhomme* and *Misener* are prosecutorial discovery cases while the case at bench involves the scope of permissible defense discovery. However, the same concerns regarding the defendant's privilege against self-incrimination are involved in either setting and the governing principles are unchanged.

[14]In camera proceedings are sometimes used to safeguard the constitutional or statutory rights of nonparties to the litigation. See, for example, *Pacific Lighting Leasing Co.* v. *Superior Court* (1976) 60 Cal.App.3d 552 [131 Cal.Rptr. 559] (discovery by subpoena duces tecum, the nonparty's constitutional right to freedom from unreasonable searches and seizures); *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (discovery by subpoena duces tecum, records of investigations by the internal affairs department of the sheriff's office); *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148 [143 Cal.Rptr. 450] (discovery by petition for writ of mandate for statutorily privileged psychotherapist-patient records); *People* v. *Memro* (1985) 38 Cal.3d 658, 685-687 [214 Cal.Rptr. 832, 700 P.2d 446] (discovery by noticed motion, for police personnel records).

■ The basic elements of due process are reasonable notice and an opportunity to be heard. The People (and interested third parties) are entitled to that process no less than the defendant.

■ Thus, the initial inquiry to be made by the court should go to the question of how much, if any, of the matters submitted for in camera review must remain confidential. A balance must be struck between the requirement that a defendant make a plausible justification for the requested discovery and the limitations on prosecutorial discovery. It is conceivable that if too much is required of a defendant, he could be forced to reveal anticipated defense strategy. The court should resolve this question in an ex parte in camera hearing. (*People* v. *Worthy* (1980) 109 Cal.App.3d 514, 525, fn. 3 [167 Cal.Rptr. 402]; *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330, fn. 1 [154 Cal.Rptr. 132]; *Pacific Lighting Leasing Co.* v. *Superior Court, supra,* 60 Cal.App.3d 552, 559-568.)

■ The defendant who seeks to use in camera procedures in connection with a motion for discovery should first give a proper and timely notice and claim his Fifth Amendment or other privilege, and should support that claim by affidavit or declaration, stating his reasons, all of which can be considered by the court in camera. The trial court should then make a clear finding, on the record, that it has received and considered such papers and that it finds or does not find that the in camera procedure is both necessary and justified by the need to protect a constitutional or statutory privilege or immunity.

The court's decision should be based upon an evaluation of all of the facts in light of the need to answer two critical questions. Will disclosure to the prosecutor "conceivably" lighten the People's burden or will it serve as a "link in a chain of evidence tending to establish guilt"? Is the information which the defendant seeks to protect subject to some constitutional or statutory privilege or immunity? If the answer to either question is yes then disclosure should not be made. ■ On the other hand, if the claim of confidentiality cannot be sustained as to some or all of the material submitted by the defendant then such material should be made available to the prosecutor (and, where appropriate, interested third parties) so that all parties will have the fullest opportunity possible to participate in those proceedings which will determine what, if any, discovery should be ordered.

As our Supreme Court has noted, there are two very real problems with ex parte proceedings where all interested parties are not able to participate: (1) the court may well be deprived of factual and legal contentions on which to base its decision and (2) any order made in the absence of adverse parties may well sweep "more broadly than necessary." (*United Farm Workers of*

*America* v. *Superior Court, supra,* 14 Cal.3d 902, 908-909.) It occurs to us that the nature and character of the discovery sought in a case such as this one runs a particular risk of realizing on both of these concerns. In a murder case where a defendant seeks information regarding "similar" crimes the trial court needs to be particularly informed on all facts relating to such questions as the existence of plausible justification, record availability, governmental burden, and possible violation of public interest (Gov. Code, § 6255; Evid. Code, § 1040) or third party confidentiality.

Once the court has completed this preliminary in camera inspection it can determine what portions, if any, of defendant's moving papers can be disclosed and which must remain under seal. It then should proceed to the merits of defendant's discovery motion giving every reasonable notice and opportunity to participate to any opposing party.[15] That motion should then be resolved in accordance with well established criminal discovery principles.

"Unlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a judicially created doctrine evolving in the absence of guiding legislation. [Citations.] ■ A defendant's motion to discover is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand. [Citations.] Allowing an accused the right to discover is based on the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. [Citations.]" (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 535-536.)

"An accused, however, is not entitled to inspect material as a matter of right without regard to the adverse effects of disclosure and without a prior showing of good cause. 'In criminal cases, the trial court retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest. [Citations.] Additionally, the court has discretion to deny discovery in the absence of a showing which specifies the material sought and furnishes a "plausible justification" for inspection. [Citations.]' " (*Hill*

---

[15] We are not unmindful of the fact that the governmental entity's role is likely to be severely limited by its lack of knowledge as to the factual and legal basis for defendant's motion if some or all of the defendant's confidentiality claim is sustained. However, in such a circumstance its position is no different from that of a defendant who, for example, seeks review of an order denying his motion for disclosure of the identity of a confidential informer following an in camera hearing from which the defendant and his counsel are excluded. (Evid. Code, § 1042, subd. (d).) In both cases, the parties must do the best they can with the information they have, and the appellate court will fill the gap by objectively reviewing the whole record. (*People* v. *Collins* (1986) 42 Cal.3d 378, 395, fn. 22 [228 Cal.Rptr. 899, 722 P.2d 173].)

v. *Superior Court* (1974) 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820].)

■ No hard and fast rule can be laid down as to what will constitute plausible justification in every case. However, a showing "that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense . . . .* [Citations.]" (10 Cal.3d at p. 817.) (Italics added.) (See also, *People v. Memro, supra,* 38 Cal.3d 658, 677; *City of Santa Cruz v. Superior Court* (1987) 190 Cal.App.3d 1669, 1673 [236 Cal.Rptr. 155].)

The burden of making such a showing and establishing the existence of a plausible justification for the production of the requested information or material is on the criminal defendant. (*Ballard v. Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]; *Lemelle v. Superior Court, supra,* 77 Cal.App.3d 148, 162.) The key to his right to discovery is a showing that the requested information or material *will facilitate the ascertainment of the facts and contribute to the fairness of his trial.* (*Pitchess v. Superior Court, supra,* 11 Cal.3d 531, 536.) " 'Although the defendant does not have to show, and indeed may be unable to show, that the evidence which he seeks to have produced would be admissible at the trial [citations], *he does have to show some better cause for inspection than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.'* [Citations.]" (*Lemelle v. Superior Court, supra,* 77 Cal.App.3d 148, 162.) (Italics added.)

Finally, the evaluation of a claim of plausible justification, in a case such as this one where the defendant seeks evidence of third party culpability, should be made in light of the broad evidentiary rule announced by the Supreme Court in *People v. Hall* (1986) 41 Cal.3d 826, 829 [226 Cal.Rptr. 112, 718 P.2d 99]. ■ There the court held that any relevant evidence is admissible at trial if it "raises a reasonable doubt as to a defendant's guilt, including evidence tending to show that a party other than the defendant committed the offense charged. . . . To be admissible, the third-party evidence need not show 'substantial proof of a probability' that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt. . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt; *there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.*" (*Id.,* at pp. 829, 833) (Italics added.)

The lowered evidentiary threshold set forth in *Hall* has an obvious impact on the scope of discovery available to the criminal defendant. However, a sufficient showing of plausible justification still must contain *facts* demonstrating that there is a reasonable likelihood that the material for which discovery is requested is, or might lead to, direct or circumstantial evidence which *links* a third person to the actual crime. No bright line test exists as to just what facts will suffice, in any particular case, to meet this standard. Each case must be decided on its own facts, but such showing must at a minimum demonstrate something more than a mere motive or opportunity for another person to have committed the crime.

█ The trial court, in deciding whether the defendant shall be permitted to obtain discovery of the requested material, must consider and balance a number of factors. Specifically, the court should review (1) whether the material requested is adequately described,[16] (2) whether the requested material is reasonably available to the governmental entity from which it is sought (and not readily available to the defendant from other sources), (3) whether production of the records containing the requested information would violate (i) third party confidentiality or privacy rights or (ii) any protected governmental interest, (4) whether the defendant has acted in a timely manner, (5) whether the time required to produce the requested information will necessitate an unreasonable delay of defendant's trial,[17] (6) whether the production of the records containing the requested information would place an unreasonable burden on the governmental entity involved and (7) whether the defendant has shown a sufficient plausible justification for the information sought.

---

[16] For example, information characterized by such broad descriptions as "all other similar crimes" or "all crimes [e.g., murders] committed during [a certain time frame] with a similar modus operandi," may be so inadequate as to make the discovery and location of such information an unreasonable burden on the governmental entity. The only practical effect of such an order may be simply to postpone the defendant's trial indefinitely. Such broad requests must be scrutinized carefully by the trial judge as part of the balancing process in which he must engage.

[17] This issue is necessarily related to the timeliness of defendant's request and must be evaluated in light of all of the facts. However, we note that the Legislature has expressed itself on the importance of the earliest possible resolution of criminal trials, including an express condemnation of excessive continuances which was added in 1985. Penal Code section 1050, subdivision (a), provides, in pertinent part: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. *Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails.* It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice . . . ." (Italicized language added in 1985.)

With those general principles in mind, we turn to the People's objections to the subject order. ■ First, the People argue that the filing of defense counsel's declaration under seal for in camera inspection and review denied them a fair hearing. In this case that is not an argument which need detain us long. The People made no objection to this procedure in the trial court. It cannot now be raised for the first time in a petition for an extraordinary writ. (*Lemelle* v. *Superior Court, supra,* 77 Cal.App.3d at p. 159.) Further, from the record it appears that the People were *in fact* afforded a fair hearing. The deputy district attorney was well prepared and argued the motion at length, surmising that defendant was contending that there may be similar modus operandi in the crimes for which the reports were sought and thus should be allowed to inspect those reports.

■ With respect to the People's objections to the discovery order itself, it is clear that the court did not abuse its discretion in granting defendant's motion for discovery. (See *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) ■ ■ ■ ■ In making his order, Judge Tso stated, "I don't think timeliness is a proper objection here [18] and then I am bound by *People* v. *Hall, supra,* [41 Cal.3d 826] . . . [which] permits discovery of police case reports or crime reports . . . [since] they may be capable of raising a reasonable doubt with regards to the defendant's guilt. Also I believe [defendant's attorneys] have raised and satisfied plausible justification for the particular items sought . . . ."

■ Contrary to the People's argument, it appears that the requested reports were described with sufficient specificity. The 12 reports were referred to by investigating law enforcement agency name, DR numbers, victim's names and date of attack/death. There would be no significant burden placed upon any governmental entity in order to locate or produce the requested information. Moreover, the motion had no apparent dilatory purpose, no continuance of the trial was requested and the prosecution would not have been required to copy one page of the ordered documents. Further, no serious question has been raised that the release of this information would have violated any protected governmental interests or any third party confidentiality or privacy rights.

---

[18] As a general proposition this would *not* be correct. Timeliness and the possible delay of the trial, as we have pointed out, are factors which the court must take into consideration in determining whether to grant a defendant's discovery request. In this particular case, neither side sought a stay of the trial and the ready availability of the requested reports negated the possibility that their production would be the source of any trial delay. However, our acknowledgement of the relative minor significance in this case of the timing of defendant's motions should not mislead counsel as to the importance which we place on this factor. Discovery motions should be made sufficiently in advance of the scheduled or anticipated trial date so as to assure that the People (or interested third parties) will be able to comply with, or seek appellate review of, any order which the trial court might make *without requiring* an unreasonable delay of the trial.

The 12 reports which were requested involved crimes which bore some similarities to the crimes with which the defendant was charged, i.e., the victims were lone females, the attacks were associated with stabbing/bludgeoning/sex, and took place in a relevant time period in the same geographic area. ██ ██ According to the defense attorney, the information was requested to determine the type of murder involved, the description of the victim, the location, the time, and other sufficient indicia to allow a comparison to be made between the facts of defendant's case and of the different cases. A minimal demonstration of plausible justification was made by this showing. While not particularly strong, it was sufficient to demonstrate a "reasonable likelihood" that the requested reports might lead to circumstantial evidence that a third person was implicated in one or more of the crimes with which the defendant was charged.

We cannot conclude that the trial court abused its discretion in reaching that conclusion. As we have noted, the trial court is required to balance a number of factors in addition to the showing of plausible justification. (*Lemelle* v. *Superior Court, supra,* 77 Cal.App.3d 148, 164-165.) Here, the defendant sought a very limited number of specifically described reports which were readily available. Under such circumstances, it was not necessary that the showing of plausible justification be as strong as might be required under other circumstances.

Thus, the trial court could reasonably conclude that the *specifically designated* reports of crimes similar to those with which defendant had been charged could help him in preparing his defense. Balancing all of the relevant factors we perceive no substantial reason why the reports should not have been made available to the defendant. There was no error.

### DISPOSITION

1. *City of Alhambra Petition (Case No. B031755)*

A peremptory writ of mandate shall issue to the Superior Court of Los Angeles County directing it to vacate its orders of December 1, 1987, and December 10, 1987, granting the defendant's ex parte motion to produce and to instead enter a different order denying such motion without prejudice to renewal before the trial judge for resolution in accordance with the principles set forth herein.

Further, a peremptory writ of mandate shall issue to the Superior Court of Los Angeles County directing it to vacate its order of January 6, 1988, denying City's motion to quash the subpoena issued by the district attorney compelling the deposition of Officer Varga and to instead enter a different

order granting such motion without prejudice to renewal before the trial judge for resolution in accordance with the principles set forth herein.

### 2. *People's Petition (Case No. B032779)*

The petition for writ of mandate filed February 18, 1988, is denied. The alternative writ heretofore issued on February 18, 1988, is discharged.

Klein, P. J., concurred.

**DANIELSON, J.**—I concur in the majority opinion but write separately to express my additional views since the purpose of this opinion is to discuss important issues which are likely to recur and, in my opinion, some of the issues would benefit from added discussion.

In this proceeding we considered a petition for a writ of mandate in which the People asked us to command the superior court to set aside an order for discovery made pursuant to the motion of the defendant supported by papers lodged and considered in camera, in a capital criminal case.

### *Scope and Character of Accused's Discovery*

As a general rule, an accused may have access to all evidence that can throw a light on the issues in the case, provided it is admissible and not confidential. The proper test for determining whether production must be granted is whether there is good reason to believe that the information when produced would be admissible in evidence for some purpose, e.g., for impeachment. (*People* v. *Riser* (1956) 47 Cal.2d 566, 586-587 [305 P.2d 1].)

An accused's right to discovery is not without limitations, however, and " 'he does have to show some better cause . . . than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' [Citations.]" (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 at p. 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]; *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 at p. 537 [113 Cal.Rptr. 897, 522 P.2d 305].)

An accused's request for discovery must describe the requested information with reasonable specificity and must be sustained by plausible justification. (*Ballard, supra,* 64 Cal.2d at p. 167; *Hill* v. *Superior Court* (1974) 10 Cal.3d 812 at p. 817 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820].)

### *Discovery by Prosecution*

Discovery in criminal cases is not a two-way street. In contrast with discovery by the accused, discovery by the prosecution is very strictly and

narrowly limited. In *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], our Supreme Court effectively terminated and prohibited prosecutorial discovery, with certain specific exceptions set forth in footnote 7, at pages 55-56 of that opinion. (For a review of the evolution of prosecutorial discovery see: *People* v. *Collie, supra,* 30 Cal.3d at pp. 50-56; *In re Misener* (1985) 38 Cal.3d 543, 546-551 [213 Cal.Rptr. 569, 698 P.2d 637] (but see dis. opn. of Lucas, J.).)

*Defendant's Motion for Discovery Was Not Timely Made*

In the case at bench the district attorney, in opposing defendant's motion for discovery, raised the question of timeliness in making the motion. The trial court ruled that it did not think that lack of timeliness was a factor or a proper objection in this case.

Motions for discovery may be made at any time, before or during trial of a criminal case; however, in determining whether to grant the motion the trial court may consider the timeliness of the motion. A motion for discovery of records in possession of the prosecution, if made during the course of the trial, might delay the trial if the motion were granted. (*Hill* v. *Superior Court, supra,* 10 Cal.3d 812, 821.)

The granting of a motion for discovery in a criminal case is addressed to the sound discretion of the trial court, which has inherent power to order discovery in the interests of justice. (10 Cal.3d at p. 816.) Yet timeliness in making such motion is an important consideration. As the majority has pointed out (fn. 17, *ante*), the Legislature has declared the public policy of California that criminal cases be heard and determined at the earliest possible time.

In considering and ruling upon a motion for discovery made at the time of trial, or after trial has commenced, courts must exercise great care not to permit such motion to be used as a device or tactic to disrupt, or unduly to delay, the trial of the cause, while yet assuring the legitimate needs and rights of the defendant. Before such discovery is ordered the moving party should establish a sound justification for his lateness, by noticed motion, with fair opportunity for opposition by the adverse party, and not in an in camera proceeding.

Relevant factors which must be considered by the trial court in exercising its discretion to rule on a late motion for discovery include the moving party's prior history of diligence in pretrial proceedings, the reasons for the late request, the length of time since the proceedings began, the present stage of the proceedings, the disruption and the delay reasonably expected

to ensue from the requested discovery and the perceived importance of that discovery.

In considering the question of timeliness trial courts must consider not only absolute time, i.e., the months or days since the prosecution was commenced, but, what may be more important, time as it relates to the present stage of the proceedings. A motion for discovery made as the trial is about to commence, or after the trial has commenced as in the case at bench, may create undesirable or prejudicial attendant circumstances which hamper the prosecution in performing its duties, cause disruption and delay, jeopardize an ongoing prosecution and, almost certainly, result in the unnecessary waste of judicial resources.

Discovery procedures should be conducted during the pretrial period, thereby providing all parties concerned with a fair opportunity to litigate whatever controversies may arise and avoiding the need to interrupt, stay, or compromise the trial. Even though the burden of producing the information sought may not itself be great, the very fact of being confronted with a discovery motion after the trial has commenced may jeopardize the prosecution and result in a serious interruption of the trial and harassment of counsel.

In the case at bench the original information was filed on June 6, 1985, charging defendant with several felonies, including two murders. Defendant filed a discovery motion on August 15, 1986; on August 22, 1986, that motion was granted and a continuing discovery order was entered. It is implicit from the record before us that the People have complied with that continuing order. Jury selection was commenced on December 15, 1987, and at a hearing of the motion, in February 1988, the trial judge stated that he was about to seat the jury.

The motion for discovery here in controversy was not filed until February 6, 1988—32 months after the information charging the defendant was filed; nearly 18 months after defendant's original discovery motion was filed, resulting in the continuing order; and nearly two months after jury selection had commenced. The crime reports which defendant now seeks are for 12 crimes committed within the time span from June 27, 1984, until July 7, 1985—ending one month after the information was filed and more than a year before he filed his first discovery motion. The record before us does not disclose when defendant was arrested, but nine of those crimes took place before June 6, 1985, when the information was filed against defendant, and three occurred later, on June 28, July 5, and July 7, 1985. (See fn. 6, *ante.*)

The crime reports which defendant sought to discover all relate to a series of notorious, highly publicized crimes, which were of common knowledge

in the community and could not possibly have escaped the attention of persons such as defendant's counsel, who are actively engaged in the practice of criminal law. In his declaration in support of the motion for discovery, as served on the district attorney and filed in the trial court, defendant's counsel stated that the 12 requested reports pertained to the case of People v. Ramirez, pending in a different department of the superior court. Defendant's delay of a year and a half in seeking discovery of those crime reports is unreasonable, and the requested discovery should not have been granted unless that delay was fully and satisfactorily explained and justified, or shown to be essential to the defense.

When the subject discovery order was made, on February 11, 1988, almost two months after jury selection had commenced, the People were confronted with a dilemma. They could either (1) seek an indefinite stay of the trial in order to obtain full judicial review of the trial court's ruling, thereby jeopardizing the possibility of a successful prosecution, or (2) immediately comply with the discovery order, thereby rendering their request for relief moot and foregoing their right to full judicial review of a crucial issue. The People should not have been put to that choice; defendant's late request had placed them in an untenable position. Because of the extreme emotional upset of one of their witnesses the People believed it important that the trial of the serious charges in this capital case be concluded as soon as possible and, under that compulsion, they complied with the order, rendering this cause moot. The dilemma was the product of the untimeliness of defendant's motion which, on its face, was grossly prejudicial to the People. Such a circumstance is detrimental to the best interests of the administration of justice.

*The Trial Court Erred in Considering, In Camera, Defendant's Motion for Discovery Without First Finding That an In Camera Consideration Was Necessary to Protect Defendant's Privilege Against Self-incrimination*

The general rule as to discovery proceedings in criminal cases must be that they be open, not closed; secrecy is the exception, not the rule. Such discovery must be subject to notice, full litigation, judicial decision and, if necessary, judicial review, as are other proceedings in the administration of justice. The only exceptions to that rule must be those required by the need to safeguard constitutional rights or privileges, or such statutory rights or privileges as are consonant with our Constitutions.

The right of a defendant in a criminal case to use in camera proceedings in connection with discovery depends upon, and is required by, his privilege against self-incrimination. That privilege is guaranteed by the Fifth Amendment to the Constitution of the United States, which provides that

"No person . . . shall be compelled in any criminal case to be a witness against himself . . ." and by article I, section 15, of the California Constitution which provides that "Persons may not . . . be compelled in a criminal cause to be a witness against themselves . . . ."

As interpreted by judicial decisions the privilege against self-incrimination protects persons from being compelled to testify as witnesses against themselves, and also from being compelled to produce documents (*People* v. *Collie, supra,* 30 Cal.3d 43, 55-56, but see fn. 7 at p. 55), or other information (*Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326-327 [85 Cal.Rptr. 129, 466 P.2d 673]) which may tend to incriminate them.

In *People* v. *Schader* (1969) 71 Cal.2d 761, at page 770 [80 Cal.Rptr. 1, 457 P.2d 841], our Supreme Court adopted the language of the United States Supreme Court, " 'that the American system of criminal prosecution is accusatorial, not inquisitorial, and that the Fifth Amendment privilege is its essential mainstay. . . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against the accused out of his own mouth.' (*Malloy* v. *Hogan* (1964) 378 U.S. 1, 7-8 [12 L.Ed.2d 653, 658-659 . . . ].) The People must 'shoulder the entire load' of their burden of proof in their case in chief, without assistance either from the defendant's silence or from his compelled testimony. (*Tehan* v. *Shott* (1966) 382 U.S. 406, 415 [15 L.Ed.2d 453, 459 . . .]; *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106 . . . ]; *Murphy* v. *Waterfront Com.* (1964) 378 U.S. 52 [12 L.Ed.2d 678 . . . ]; 8 Wigmore, Evidence (McNaughton rev. 1961) p. 317.)"

The scope of the privilege has been defined in opinions of our Supreme Court to forbid the compelled disclosure, by a defendant, of anything which "conceivably might lighten the prosecution's burden of proving its case in chief" (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, 326); or "which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense" (*ibid.*); or that could "possibly have a tendency to incriminate the witness. [Citations.]" (*Ibid.*; see also, *In re Misener, supra,* 38 Cal.3d 543, 546 et seq.)

The privilege against self-incrimination strictly limits prosecutorial discovery against a defendant, and it also protects a defendant who seeks discovery from being compelled to disclose information which would tend to incriminate him.

It is established that when a defendant seeks discovery he may make a showing of his need for the discovery in camera, if necessary. (*Pacific

*Lighting Leasing Co.* v. *Superior Court* (1976) 60 Cal.App.3d 552, 558 [131 Cal.Rptr. 559]; *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330, fn. 1 [154 Cal.Rptr. 132].) But that does not mean that all defense discovery proceedings may be conducted in camera.

When the reason for an in camera proceeding is absent, there should be no in camera proceeding. Absent circumstances raising the privilege against self-incrimination, or other privilege provided by law, there is no reason to excuse the defendant from compliance, in open court, with the normal adversary procedures of criminal litigation. The defendant must then establish the necessary plausible justification for the requested discovery in open court and subject to opposition in an adversary proceeding. (*Pacific Lighting Leasing Co.* v. *Superior Court, supra,* 60 Cal.App.3d at p. 567.)

When the court does not find that in camera proceedings are necessary the papers should be ordered to be served and filed in the cause and openly and regularly litigated according to the normal procedures of criminal litigation.

In the case at bench no finding of justification for an in camera proceeding was made, and there is nothing in the record to indicate that the defendant's right to utilize in camera procedures was ever separately considered. Insofar as the record discloses, the papers were simply lodged for in camera review, and thusly received and considered, without question, and as a matter of course.

In his return to the petition for writ of mandate in this proceeding, defendant has lodged with this court, under seal, "[a] copy of defense counsel's declaration, marked exhibit 'D' ", which we must assume is a true copy of the document which he had lodged with the trial court, for in camera inspection, in support of his motion for discovery. The writer has examined said exhibit D and notes that, in addition to the declaration of defense counsel, the exhibit contains a ten-page memorandum of points and authorities (which is not the same as the three-page memorandum which he served and filed as part of his in-court motion papers), and also copies of two court reporters' daily transcripts which are matters of public record. With the exception of defense counsel's declaration those documents should not have been received and considered in camera.

After examining the declaration of defense counsel, lodged in camera with the trial court in support of defendant's motion for discovery, the writer finds that if the decision had been his to make, he would have found and ruled that an in camera proceeding was not necessary to protect the defendant's privilege against self-incrimination and would have ordered

that all of the motion papers, including the declaration, be served and filed regularly in the cause and subject to full litigation as with any other motion. The writer recognizes that discovery in criminal cases rests in the sound discretion of the trial court; however, it is axiomatic that fair minds can differ. In the case at bench, as in similar cases, the court having exercised its discretion, and there being some substantial evidence to support the trial court's decision, I would find that the trial court did not abuse its discretion and the trial court's implied decision to consider defense counsel's declaration in camera should stand.

During the hearing before the trial court defendant's reasons for requesting in camera consideration were not specifically stated but, in the colloquy among counsel and the court, it appeared to be mutually assumed and conceded that defendant wished to examine the requested crime reports in order to study the modus operandi of the perpetrator of those crimes. The implicit reason for this was to determine whether there was substantial commonality between the methods employed in the commission of the crimes described in the sought-after reports and the crimes with which the defendant is here charged. From that it can be inferred that defendant was seeking evidence or information from which it could be argued that a third party was the perpetrator of the crimes charged against defendant.

In that colloquy the trial court referred to the decision in *People* v. *Hall* (1986) 41 Cal.3d 826 [226 Cal.Rptr. 112, 718 P.2d 99], stating that *Hall* involved "discovery" and that he was "bound by it." The trial judge misread *Hall*. *Hall* is not a discovery case. The questions decided in *Hall* were raised in an offer of proof. *Hall* does not deal with the privilege against self-incrimination. *Hall* relates to the admissibility of evidence of third party culpability. In *Hall* our Supreme Court ruled that: "[I]t is always proper to defend against criminal charges by showing that a third person, and not the defendant, committed the crime charged." (*People* v. *Hall, supra,* 41 Cal.3d at p. 832.) "To be admissible, the third party evidence . . . need only be capable of raising a reasonable doubt of defendant's guilt. At the same time, we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability. . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Id.* at p. 833.) "[C]ourts should simply treat third-party culpability evidence like any other evidence: if relevant it is admissible ([Evid. Code] § 350) unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion (§ 352)." (*Id.* at p. 834.)

The sense of *Hall* is that evidence of third party culpability, when admissible, is essentially exculpatory in nature. Therefore evidence of third party culpability could not possibly have a tendency to incriminate the accused. (See *Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, 326.)

The crime reports which defendant sought to discover in these proceedings were discoverable, since they are not privileged,[1] they probably meet the minimum degree of plausible justification that should be required by a court, and might lead to the discovery of evidence which might assist him in preparing his defense (see *Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 167). Nevertheless, the discovery motion should have been regularly served, noticed, and litigated. The search for evidence of third party culpability does not require or justify in camera procedure.

### The Trial Court Erred in Citing and Relying on an Unpublished Opinion

Rule 977(a), California Rules of Court, provides: "An opinion that is not ordered published shall not be cited or relied on by a court or a party in any other action or proceeding except as provided in subdivision (b)." The exceptions provided in subdivision (b) do not apply in this case.

At the hearing of the discovery motion on February 11, 1988, the trial court stated: "The record should reflect that I have been provided copies of an opinion and order for a peremptory writ of mandate in the matter of Richard Ramirez . . . out of Division VII of our Second Appellate District. There's also an order modifying that opinion that was filed January the 21st that I'm in receipt of. I have read and considered the document."

Later, during the same hearing, the court inquired of counsel: "How much weight can I give to the opinion and order for peremptory writ of mandate that was filed January the 6th with modifications January the 21st in the case of Richard Ramirez, which is a pending case in [a different department of] our court? . . . How much weight can I give that, if any?"

Defense counsel replied: "Your Honor, I think you can certainly use that opinion as a guide. I don't believe it is published. So, it is not binding on you and, accordingly, under the rules of court it is not properly cited as authority. But it certainly serves as persuasive authority similar to a well-reasoned and compelled [sic] timely law review article on the subject."

---

[1] No claim of privilege has been asserted by the People.

Near the close of that day's hearing, as the court was about to make its ruling, the court stated: ". . . and I have to give great weight to what happened in—as to our court insofar as that peremptory writ was issued to our very court in the matter of Richard Ramirez . . . as [defense counsel] indicated is not a published report."

In response to the court's inquiry, defense counsel should have informed the court, pursuant to rule 977(a), that neither the court nor any party could cite or rely on that unpublished opinion. Defense counsel knew that the upublished opinion could not properly be cited as authority, and so informed the court.

It was error for the trial court to have received and to have read and considered that unpublished opinion, let alone to have given it "great weight" in arriving at its ruling on the discovery motion. The trial court, sua sponte, should have ordered that the unpublished opinion, and all references to it, be deemed stricken from the file.

*The Requested Discovery Was Described With Adequate Specificity*

Petitioner goes to some length arguing that defendant failed to describe the information sought with adequate specificity to justify the discovery order. That argument is without merit. The descriptions of the reports sought by the defendant are models of specificity. (See majority opn., fn. 6, pp. 1126-1127, *ante*.) There is no ambiguity whatsoever.

The petition of the People for review by the Supreme Court was denied February 23, 1989.