Filed 10/17/22 In re J.S. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. J.S., Defendant and Appellant. | A162419 (Marin County Super Ct. No. JV27024) |

This case turns on the showing of good cause required to obtain discovery under Penal Code section 745,[1] enacted as part of the California Racial Justice Act of 2020 (the Act) to combat racial bias and disparities in our criminal justice system. (Assem. Bill No. 2542 (2019-2020 Reg. Sess.), Stats. 2020, ch. 317, §§ 1, 3, 3.5.) The juvenile court denied a discovery motion, finding the minor, J.S., had not established the good cause required under section 745, subdivision (d). Following the guidance of *Young v. Superior Court* (2022) 79 Cal.App.5th 138 (*Young*), we conclude J.S. established the threshold showing of plausible justification for discovery under the Act. We therefore

---

[1] Unless otherwise noted, undesignated statutory citations are to the Penal Code.

1

reverse the order and remand for the juvenile court to address the appropriate scope and extent of discovery in light of the factors identified in *Young*.

## BACKGROUND

### A.

The Act proclaims the state "shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) Section 745, subdivisions (a)(1) through (a)(4), delineate specific violations of the Act. As relevant here, a defendant who makes a prima facie showing of a violation is entitled to a hearing to prove by a preponderance of the evidence that (1) the charge, conviction, or sentence was more severe than for similarly situated defendants of other races; and (2) the prosecution more frequently sought more severe convictions or penalties against individuals of the defendant's race than against other similarly situated individuals. (§ 745, subds. (a)(3), (a)(4)(A), (c).) Such proof establishes a violation of the Act unless the prosecution shows race-neutral reasons for the disparity. (§ 745, subd. (h)(1); *Young, supra,* 79 Cal.App.5th at p. 167.)

To this end, the Act permits defendants to seek relevant discovery. Under section 745, subdivision (d), "[a] defendant may file a motion requesting disclosure to the defense of all evidence relevant to a potential violation of subdivision (a) in the possession or control of the state. . . . *Upon a showing of good cause,* the court shall order the records to be released" subject to court-authorized redactions. (§ 745, subd. (d), italics added.) Section 745 specifically authorizes the use of statistical evidence or aggregate data to prove race-based differential treatment. (§ 745, subds. (c)(1), (h)(1).)

2

**B.**

During the early months of the COVID-19 pandemic, J.S. and other minors broke into a shuttered high school swimming pool in violation of stay-at-home orders then in effect. Responding police officers apprehended the youths in the closed and locked pool area and cited them for trespassing (Pen. Code, § 602, subd. (m)) and violating the stay-at-home orders (Health & Saf. Code, § 120295).

Five months later, a security agent at a Target store apprehended J.S. and another minor shoplifting alcohol. J.S. gave the responding police officer a false name, but was eventually identified through school records. The officer found two bottles of stolen tequila in J.S.'s backpack and a bag of THC edibles tucked into his waistband. While J.S. was being placed in the back of the patrol car, the officer said, " 'the fact that you're demanding respect, that needs to stop' because 'you can ask any gang member, respect gets respect and disrespect gets disrespect.' " J.S. was cited for possessing marijuana (Health & Saf. Code, § 11357, subd. (a)(1)) and providing false identification to a peace officer (Pen. Code, § 148.9, subd. (a)).

**C.**

A juvenile wardship petition charged J.S. with one count of trespassing (Pen. Code, § 602, subd. (m); the pool incident) and one count of giving false identification to a peace officer (Pen. Code, § 148.9, subd. (a); the Target incident). The probation department initially recommended informal non-wardship supervision under Welfare and Institutions Code section 654, but later, due to J.S.'s poor behavior, referred the matter to the district attorney for a wardship petition. (Welf. & Inst. Code, § 602.)

At the hearing set for entry of plea, probation recommended that J.S. be given another six months on informal

wardship. The court declined due to J.S.'s noncompliance on informal supervision and what it observed to be a disrespectful attitude toward the court. Nonetheless, it ordered probation to prepare a report on his suitability for diversion.

According to that report, J.S. was generally uncooperative with, and at times belligerent in responding to, the probation officer's efforts to work with him. He failed under informal supervision due to his poor behavior, disrespectful attitude, and lack of follow-through. His school records showed poor-to-failing grades and disruptive and disrespectful behavior in the classroom. The probation officer was also concerned about J.S.'s offensive language and pattern of dishonesty.

Probation continued to recommend, with reservations, that J.S. be placed on non-wardship probation. It cautioned, however, that it would change its recommendation to wardship if his behavior failed to improve despite the services provided to him.

The recommendation was short-lived. At the next hearing, probation changed its recommendation to wardship based on new concerns that J.S. had been seen in a video associating with known adult and juvenile probationers. The court rejected defense counsel's suggestion that the matter had escalated "very quickly." J.S.'s behavior had started as far back as 2016; his conduct had become worse, not better, since probation started working with him; and the video showed him associating with gang members. The court set the case for a jurisdictional hearing.

**D.**

J.S. moved for discovery under section 745, seeking anonymized documents and data showing, with respect to both charges, all referrals of juveniles for prosecution in Marin County; all instances in which juveniles in Marin County had been charged; the resulting sentence or disposition; and each

4

juvenile's criminal history. J.S. also requested the date, time, and description, if available, of each such incident; the concerned juvenile's age and ethnicity or race; and the number and nature of any prior referrals and sustained delinquency petitions. J.S. asserted these records were relevant to whether he was being charged with or might be found to have committed a more serious offense, or subjected to more severe consequences, than defendants of other races. (§ 745, subd. (a).)

The juvenile court sustained the false identification charge and found the trespassing allegation to be unsupported. Turning to disposition, the court observed that J.S. "very clearly, needs some interventions because he is going down a very wrong path." The court ordered wardship probation (Welf. & Inst. Code, § 602) with various conditions.

It then denied J.S.'s discovery motion under section 745. The court reasoned the motion was moot because it pertained to the unsustained trespassing allegation; the pool incident was more serious than average teenage hijinks because it occurred during the COVID emergency; and defense counsel's supporting declaration about local law enforcement responses to teens trespassing at school pools was based on unreliable anecdotal information. After J.S.'s attorney pointed out that the motion went to both allegations, the court clarified that its ruling encompassed the shoplifting incident as well and found the encounter raised no suggestion of racial profiling or discrimination.

## DISCUSSION

### A.

After the ruling in this case, in *Young, supra,* 79 Cal.App.5th 138, Division Four of this court articulated a multifactor test for good cause for discovery under section 745, subdivision (d). Convicted of possessing Ecstasy for sale, the

defendant there sought information he believed would show the district attorney brought possession for sale charges against black defendants more frequently than against similarly situated defendants of other races. (*Young, supra,* at pp. 143-144.) He cited as good cause statewide data showing black drivers are more likely to be stopped than any other racial group and circumstances surrounding his arrest that suggested racial profiling. (*Id.* at pp. 146, 161.) The trial court denied the motion. (*Id.* at p. 146.)

The court of appeal disagreed. Guided by the legislative intent to eliminate racial bias in our criminal justice system (Stats. 2020, ch. 317, § 2) and the showing required for the disclosure of law enforcement records in analogous situations (see *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); *City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118 (*Alhambra*)), it distilled the following rule: "[I]n order to establish good cause for discovery under the Racial Justice Act, a defendant is required only to advance a plausible factual foundation, based on specific facts, that a violation of the Racial Justice Act 'could or might have occurred' in his case." (*Young, supra,* 79 Cal.App.5th at pp. 158-159, 144.)

This minimal "plausible justification" standard, *Young* explains, is more relaxed than the " 'relatively relaxed' " good cause standard for *Pitchess* discovery (which requires a logical link between the charge and a proposed defense). (*Young, supra,* 79 Cal.App.5th at pp. 159-160, 167.) The *Young* court explicitly rejected the Attorney General's "catch-22" contention that defendants seeking discovery to prove race-based differential treatment in violation of the Act must make a showing of such differential treatment in their own case. (*Id.* at pp. 162, 167.)

If the court finds a plausible justification for discovery, it must then consider and weigh the factors identified in *Alhambra* to decide the appropriate scope of the disclosures. (*Young, supra,*

6

79 Cal.App.5th at pp. 145, 166, 168-169.) Those factors concern whether the material requested is adequately described; its relative availability to the responding entity and the defendant; the risk of causing unreasonable delay or imposing an undue burden on the responding entity; and the risk of violating third-party confidentiality or privacy rights or protected governmental interests. (*Id*. at pp. 144-145, 168.) "Described broadly, the court's task will be to engage in a discretionary weighing of the strength of [the defendant's] factual showing, the potential probative value of the information he seeks, and the burdens of gathering the requested 'records or information' for disclosure." (*Id*. at p. 145.) However, *Young* cautions, once the defendant has established plausible justification for the information sought, it will likely be an abuse of discretion for the court to totally deny the discovery request. (*Id*. at pp. 168-169.)

**B.**

The parties do not dispute *Young's* interpretation of section 745, subdivision (d)'s good cause standard as relevant here. They part ways, however, at the result of its application. J.S. contends it requires reversal and remand with directions to grant his discovery motion in full. The People concede it "appear[s]" J.S. has satisfied *Young*'s good cause standard. In their view, however, the proper remedy is reversal and remand for the juvenile court to make that determination in the first instance and, in the "likely" event the court agrees, delineate the appropriate scope of discovery with reference to the remaining *Alhambra* factors.

We believe the better resolution lies somewhere in between. In *Young,* the court opined that, while the defendant's statewide and out-of-county data provided weak support, specific facts suggesting that racial profiling played a part in his arrest, bolstered by his statistical data, "arguably" warranted discovery. Nonetheless, it concluded that determination was better left to

7

the trial court because weighing and balancing the considerations entailed in assessing good cause is quintessentially a trial court function. (*Young, supra,* 79 Cal.App.5th at p. 166.)

This case is different. First, J.S. provided statistical data specific to the Marin County juvenile justice system showing that Latino youths in the county are six times more likely than white youths to be referred to probation, 10.4 times more likely to have a petition filed, almost 13 times more likely to be declared a ward, and 17 times more likely to be committed to an institutional placement or electronic monitoring.

Second, J.S.'s counsel attested based on information from two local high school students (her own children) that Marin County teenagers trespass on high school athletic facilities, including swimming pools, on an almost daily basis. Unless a drug or other serious violation is involved, police and campus security allow these teens to leave without demanding their names or calling their parents.

Third, counsel had obtained hundreds of pages of police records (and expected to receive more) supporting anecdotal accounts that the vast majority of responses to trespasses at Marin County high school athletic facilities are resolved with warnings. As to the shoplifting incident, J.S. observed he was handcuffed and placed in a patrol car even though Target personnel told police they did not want to press charges. Moreover, the officer's comment suggested he may have assumed J.S. was in a gang.

This is substantially stronger than the showing in *Young*. (*Young, supra,* 79 Cal.App.5th at p. 166 [pointing out flaws in Young's statistical evidence].) The People's reluctance to concede it is enough to show plausible justification for discovery—despite acknowledging it "appear[s]" to constitute good cause and that the juvenile court will "likely agree"—is unpersuasive. The threshold showing requires only a "plausible factual foundation,

8

based on specific facts, that a violation . . . 'could or might have occurred.' " (*Id.* at p. 159.) J.S. provided such facts, and the People fail to identify any deficiency in his data.

Heeding *Young*'s directive that the party seeking discovery need only make a plausible case, not a strong one (*Young, supra,* 79 Cal.App.5th at p. 166), we are satisfied J.S. has established plausible justification for discovery. We therefore remand for the juvenile court to consider the remaining *Young/Alhambra* factors to determine the scope of discovery. (See *Young, supra,* at pp. 166, 168-169.)

## DISPOSITION

The order denying discovery is reversed. We remand the case for the juvenile court to reconsider its ruling in light of our determination that J.S. has established plausible justification for discovery under the Act and to determine, guided by the other *Young/Alhambra* factors, the appropriate scope and extent of discovery warranted in this case.

_____
BURNS, J.


We concur:


_____
SIMONS, ACTING P.J.


_____
WISEMAN, J.*


A162419

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.